[Civ. No. 2061. Fourth Appellate District.—September 2, 1938.]

LOUISE M. PERNA, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Respondents.

Sanders & Jacques and Y. A. Jacques for Appellant.

Gray, Cary, Ames & Driscoll for Respondents.

BARNARD, J., *pro tem.*—This is an appeal from judgments of dismissal following the sustaining of separate de-

murrers to a fourth amended complaint in an action for damages. Two judgments were entered and two notices of appeal filed, which have been presented together. For convenience, the respondent bank and its predecessor will be referred to as the bank, and the respondent Transamerica Corporation will be referred to as the corporation.

The original complaint was filed in March, 1935. The amended complaint alleges that the corporation owned 99 per cent of the stock of the bank; that the bank was appointed executor of a certain estate on June 10, 1929, and ever since has been and now is acting as such executor; that among the assets of the estate were certain shares of stock in the corporation and certain shares of stock in the California Packing Corporation; that on September 27, 1929, the court ordered the executor to sell the stock in the California Packing Corporation; that at that time the estate was indebted to the bank on certain notes; that on June 2, 1930, the bank filed its first account without informing plaintiff thereof; that the stock in the California Packing Corporation had not then been sold; that the officers and agents of the bank had orally agreed to give the plaintiff personal notice of the filing of this account, but failed to do so, by reason of which she was "prevented from appearing upon the hearing of said account"; that this account was approved and settled on June 20, 1930; that on July 22, 1932, the bank filed its final account as executor of this estate with a petition for distribution; that the bank did not personally notify the plaintiff of the filing of said account and, because thereof, she did not attend the hearing thereon and had no knowledge of the matters therein set forth; that on August 5, 1932, the court approved and settled this account and ordered one-sixth of the estate distributed to the plaintiff; and that the bank still retains possession of that portion of the estate.

It is further alleged, on information and belief, that on September 27, 1929, the bank and the corporation, through their officers and agents, entered into a conspiracy to unlawfully use and exercise the powers possessed by the bank as the executor of said estate and in pursuance of said conspiracy the defendants did and performed the following fraudulent acts: The bank failed to sell the California Packing Corporation stock until April 22, 1932, and in the mean-

time its value very greatly decreased; the bank delayed the sale of the California Packing Corporation stock for the reason that A. P. Giannini, president of the corporation and chairman of the board of the bank, desired to delay the closing of the estate to enable the bank to enjoy the interest upon the indebtedness owed to the bank by the estate and to enable him ''to peg and stabilize the value'' of the stock of the corporation ''so that it would not suffer a decline in value, which was then taking place upon the various stock markets in the United States with relation to nearly every kind and character of stocks''; the defendants informed the plaintiff that the shares of California Packing Corporation stock had been sold, that the estate was but little indebted, and that practically all claims against the estate had been filed; the president of the corporation directed the officers and agents of the bank to retain the voting control of all stock in the corporation owned by this estate for the purpose of preventing the dumping of said stock upon the market; that although the value of the stock of the corporation steadily declined between October, 1929, and May 15, 1930, the last day upon which claims could be filed in the estate, the executor failed and refused to ask permission from the court to sell a sufficient amount of said stock to pay outstanding claims against the estate; that at the direction of the president of the corporation and the chairman of the board of the bank the stock of the corporation belonging to this estate was retained for the purpose of being voted, and the same was voted, at an annual meeting of the stockholders held on February 15, 1932; that immediately prior to July 2, 1932, the officers and agents of the bank induced the plaintiff to execute an agreement transferring the assets of the estate to the bank, advising the plaintiff that the best interests of the estate would be served if this agreement was signed by her and that when the estate was finally ready for distribution she would be personally notified; that many times between June 2, 1930, and November, 1934, she inquired of the officers and agents of the defendants as to when the estate would be ready for distribution and was told the estate was in good condition and would be closed as soon as the same could lawfully be done.

The plaintiff further alleges that prior to November 15, 1934, she had had no experience in business affairs; that she

had had many business transactions with the officers and agents of the defendants; that she relied implicitly upon their statements and advice; that her husband, an employee of the defendants, had been instructed by the defendants to refrain from telling her of the true condition of the estate and of the acts alleged to have been done by the defendants, and had been threatened with discharge if he told the plaintiff of these facts; that because of this threat her husband did not inform her of the true condition of the estate; and that she did not learn of the acts done pursuant to said conspiracy until November 15, 1934, at which time she was informed thereof by her husband "who had at all times herein mentioned, up to and including the 18th day of December, 1933, been one of the trusted officers and agents of the defendants".

In so far as the bank is concerned, the order settling the final account is final and conclusive and cannot be thus collaterally attacked. (*Tobelman* v. *Hildebrandt*, 72 Cal. 313 [14 Pac. 20]; *Security-First Nat. Bk.* v. *Superior Court*, 1 Cal. (2d) 749 [37 Pac. (2d) 69]; *Adams* v. *Martin*, 3 Cal. (2d) 246 [44 Pac. (2d) 572]; *Ringwalt* v. *Bank of America etc. Assn.*, 3 Cal. (2d) 680 [45 Pac. (2d) 967]; *Carr* v. *Bank of America etc. Assn.*, 11 Cal. (2d) 366 [79 Pac. (2d) 1096].) In discussing somewhat similar facts, although alleged in a different form of action, the court, in the last cited case, said: "There can be no doubt that . . . the order settling the executor's account is *res judicata* against any claim of liability against the bank in its capacity as executor for negligence or fraud, and such determination is binding upon all the parties interested in the estate." While the order in question could be set aside in a proper action, upon a sufficient showing of extrinsic fraud, not only are the allegations of this complaint insufficient for that purpose (*Ringwalt* v. *Bank of America etc. Assn., supra*), but no such relief is here asked for, the plaintiff stating in her briefs that she purposely brought an action at law instead of one in equity in order that she might have the right to a jury trial. Any issue of negligence or fraud on the part of the executor in failing to sell the stock was necessarily involved in the hearing on the final account, and should have been raised at that time. No claim is here made that all statutory notices were not given or that the proceedings leading to the order approving the final account were not in all respects regular.

■ We think the order approving the final account is also conclusive as regards the respondent corporation. In *Carr* v. *Bank of America etc. Assn., supra,* it is said:

"Although the respondent bank has filed no account as trustee, and the order settling the executor's account and for final distribution at first blush would not seem to be a bar against a claimed liability against the bank as trustee, nevertheless, there seems to be no escape from the conclusion that the court's negative determination of the issue of the bank's liability as executor upon the ground of negligence and fraud, of necessity, settles that issue when the question of the bank's negligence and fraud as executor is brought into question in the attempt to charge the bank as trustee."

While ordinarily each party to a conspiracy is equally liable for damages resulting from the acts of all of the conspirators an exception to the general rule is pointed out in 34 C. J., at pages 988 to 990, as follows:

"An apparent exception to the rule of mutuality has been held to exist where the liability of defendant is altogether dependent upon the culpability of one exonerated in a prior suit upon the same facts, when sued by the same plaintiff; in such cases the unilateral character of the estoppel is justified by the injustice which would result in allowing a recovery against a defendant for conduct of another, when that other has been exonerated in a direct action."

In *Duell, Inc.,* v. *Metro-Goldwyn-Mayer Corp.,* 128 Cal. App. 376 [17 Pac. (2d) 781], the court said:

"As a general proposition of law we might concede that the principle of *res judicata* applies only between parties tc the original judgment or to parties in privity with them. However, it seems settled law that lack of privity in the former action does not prevent an estoppel where the one exonerated was the immediate actor and his personal culpability is necessarily. the predicate of the plaintiff's right of action against the other."

In *Wilson* v. *Erickson,* 152 Minn. 364 [188 N. W. 994], where the plaintiff alleged a conspiracy between the guardian of his estate and other persons to defraud him in connection with a sale made by the guardian, the court said:

"Plaintiff urges that the defendants other than Erickson were not parties to the probate proceedings, and are not bound by the judgment of the probate court, and therefore

cannot invoke that judgment as an estoppel. This is the general rule. But the matters determined by that judgment are *res judicata* as between plaintiff and Erickson; and as plaintiff predicates his cause of action on the alleged wrongdoing of Erickson, and the judgment conclusively determines that Erickson was free from wrongdoing, plaintiff has no cause of action against any of the defendants. Under such circumstances the judgment bars plaintiff from prosecuting another action against the other alleged tort-feasors.''

If either of these defendants performed any act pursuant to such a conspiracy as is alleged, the bank should have been charged with such act at the time its final account as executor was presented and settled. It having been judicially determined.that the bank had properly performed its duties as executor the plaintiff cannot be permitted, while that judgment stands, to obtain a judgment against the corporation on the ground that it conspired with the bank in doing the things which have been confirmed and approved by the court.

The plaintiff suggests that, in any event, the order settling the final account is not conclusive as to the issue of whether the defendants converted the assets of said estate to their own use after a decree of distribution was entered. In this regard the complaint alleges that upon settling the final account the court directed the bank as executor ''to distribute an undivided one-sixth of said estate to the plaintiff herein, but that defendant still retains possession of that portion of said estate belonging to plaintiff''. It is further alleged that the plaintiff was told ''that there were certain legal technicalities, which were unexplained to plaintiff here, that would have to be observed before the final distribution of said estate was made'', that she was deceived by this and similar statements and that the defendants ''in pursuance of the conspiracy hereinbefore alleged, have converted the said estate to the use of said defendants''.

Aside from any other consideration, although the bank was lawfully in possession of the assets of the estate as executor, no demand for delivery to the plaintiff is alleged and no facts are set forth showing that any assets of the estate were in the hands of the executor which should then be turned over to the plaintiff. The decree of distribution is not before us and it is not inconceivable that its terms, whatever they were, could not immediately be carried out. In so far as appears

from this complaint it may not have been possible to deliver any property to the plaintiff before this action was filed, and the bank, as executor, may have been lawfully retaining the assets of the estate.

The demurrer of each defendant was properly sustained. Both judgments are affirmed.

Marks, J., concurred.