[Civ. No. 10506. First Appellate District, Division Two.—June 14, 1937.]

ELLA F. ORMEROD et al., Appellants, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Respondent.

A. G. Van Deventer and H. E. Gleason for Appellants.

Newlin & Ashburn, C. Hudson, B. Cox and A. W. Ashburn for Respondent.

STURTEVANT, J.—On May 17, 1933, Ella F. Ormerod commenced an action against Security-First National Bank of Los Angeles, a national banking association, hereinafter called the defendant, asking for the restoration and recovery of trust funds and for the removal of the trustee. An amendment to the complaint was filed on June 23, 1933. A second amended complaint was filed May 31, 1935, and an amendment to it was filed November 13, 1935. A demurrer on several statutory grounds was filed by the defendant on November 18, 1935. The demurrer was sustained without leave to amend and on November 26, 1935, judgment was entered in favor of the defendant. From that judgment the plaintiffs have appealed.

The plaintiffs' second amended complaint, as amended, brought in and named as parties, plaintiffs or defendants, all of the remaindermen and among others, contained the following allegations: The defendant is a national banking association having its principal office in the city of Los Angeles. John Ormerod died testate on the 9th day of April, 1922. His will was admitted to probate and on July 24, 1923, a final amended decree of distribution was entered. Pursuant to the terms of the will certain properties were distributed to certain individuals and the balance of the estate was distributed to the Security Trust and Savings Bank, Pasadena branch, for the purpose of paying the entire income from said balance to Ella F. Ormerod during her lifetime, and

then provided for the continuance of the trust for certain other purposes not material to the issues presented by this record. The action is prosecuted on behalf of Ella F. Ormerod and all of the remaindermen, many of whom were joined as plaintiffs and others who were joined as defendants. The Security Trust and Savings Bank was in 1929 consolidated with Security-First National Bank of Los Angeles. On the 24th day of July, 1923, the Security Trust and Savings Bank entered upon its duties as trustee and continued to act until said consolidation and thereafter Security-First National Bank succeeded to said trusteeship and has continued to act as trustee. During the course of the administration of the trust by the Security-First National Bank of Los Angeles the latter was the holder and owner of a number of securities consisting of promissory notes, some of which were secured by deeds of trust and some of which were secured by mortgages, and it issued against said securities a number of so-called participation certificates and sold said certificates to various parties including the above-mentioned trust then being administered by it. As a part of the transaction it paid to itself out of the trust funds moneys held in said trust. Before doing so the defendant did not obtain a permit from the commissioner of corporations of the state of California to issue the participation certificates. From time to time during the administration of said trust the defendant returned to the probate court its verified reports and accounts of its trusteeship. No one of said accounts and reports in any ''manner whatever apprised the court of the source from which, the manner in which, or the price at which the same was so acquired by the said trust estate''. In making said reports the defendant recited therein the following facts and no others. The first report made no mention of participation certificates. The second report, among other things, recited: ''That the principal of said estate is in income producing securities as shown by Schedule 'C' hereto annexed.'' Schedule ''C'' recited: ''Mortgage participation certificate number 5622, Shakespeare Club, date 12/5/27 due 2/5/29, interest 6½% payable quarterly . . . $500.00.'' In the third report filed March 24, 1930, it was recited: ''All investments made for said trust are in securities authorized by law or by the terms of said trust, have been carefully selected and have been made for the purpose of serving the best interest of this trust

and all parties interested therein and on none of them has the trustee made any profit, directly or indirectly. That Chowchilla Farms, Inc., of which bonds of $1500 par value due on January 1, 1930, were held in trust, was refinanced and trustee received in payment for such bonds beneficial interest participation certificates number 11,302.'' The disbursements made of funds of said trust estate were set forth as follows in the second account:

| "1928 | Disbursements | Principal | Income |
|---|---|---|---|
| Jan. 30, | Security Trust and Savings Bank, Trust No. 5103, Purchase of Mtg. Part. Ctf. #5629 and Int.............. | 3500.00 | 34.75'' |

Then follow three similar entries for other certificates purchased in 1928. The third, fourth, and fifth reports were made in a similar manner. That, in reporting the purchases made by the trustee were authorized by law, the trustee misadvised the court; that it knew the securities purchased were neither authorized by law nor by the terms of the trust; that the trustee intended to deceive the court and did deceive it; that said statements were false and untrue; that the defendant knew they were untrue when it made them; that they were made with the intention of deceiving, and did deceive. The accounts were meager and the trustee ''did purposely and fraudulently conceal'' from the court that the participation certificates had been issued by the defendant and by it were purchased for the trust without first obtaining a permit from the commissioner of corporations. The defendant at the time of the purchase knew that the certificates were in the form set forth in the complaint (pleading a form *in haec verba.*) The plaintiff Ella F. Ormerod had faith and confidence in and relied on the defendant. She did not discover the facts until March, 1933, but no facts are set forth showing why she did not sooner discover the facts. On discovering the facts she made a written demand on the defendant to restore to said trust estate the moneys paid for the participation certificates but it refused and still refuses to restore such moneys. The court from time to time made orders confirming and approving the reports and accounts of the defendant as trustee, but such orders were made and based on ''the improper conduct, the misrepresentations, and

false verified reports'' of the trustee who did not fully apprise the court of the facts. The trust estate has suffered substantial monetary loss and has been almost depleted. The investments are no longer income producing but, on the contrary, assessments have been levied against the holders.

Before going further it should be stated that section 104 of the Bank Act (Act 652, Deering's General Laws) provides as follows: ''Any trust company may issue participation certificates approved as to form by the superintendent of banks on a trust deed or mortgage and the debt secured thereby which is a legal investment for savings banks, and which is owned by such trust company or by any department of a departmental bank of which such trust company is a department; and said trust company shall issue said certificates to the department owning such trust deed or mortgage and debt, and the department owning and holding any such participation certificates may sell and transfer the same to any department of the bank or to any trust or trusts administered by it and be held therein, anything in this act to he contrary notwithstanding. . . . '' It is not claimed that the defendant at any time did not comply strictly with the provisions of said act. However, it is claimed that in other matters the defendant was guilty of failing to comply with rules imposed on it by law.

Looking back over the allegations of plaintiffs' pleading it appears at once that it is the contention of the plaintiffs that the five accounts rendered by the defendant during the years 1928–1932 each contained fraudulent false representations and that each was addressed to a separate and distinct purchase. Therefore, on each account a cause of action arose if the facts were sufficient. Disregarding the issue of fraud it was contended that the purchases reported in the second account were made in violation of the Corporate Securities Act. If so, that was an additional and separate cause of action. The fourth assignment in the demurrer of the defendant was that several causes of action had been united and not separately stated. The order of the trial court sustaining the demurrer was therefore properly sustained on the ground just mentioned.

The plaintiffs resist the attack, claiming they attempted to plead one entire scheme. (1 Cal. Jur. 351.) It will suffice to state that their allegations fall far short of

doing so, but plaintiffs do attempt to attack five different final probate orders made in five successive years of and concerning five, or more, separate purchases of certificates, each purchase standing on a separate set of facts and being a separate transaction from each and every other purchase. Each of those attacks was a separate cause of action and each should have been separately stated. (*Frost* v. *Witter*, 132 Cal. 421, 84 Am. St. Rep. 53 [64 Pac. 705]; *Lee* v. *Folcey*, 110 Cal. App. 607, 610 [294 Pac. 742]; *Wilson* v. *Rigali & Vesilich*, 138 Cal. App. 760, 767 [33 Pac. (2d) 455].)

As appears above the plaintiffs are attempting to make a collateral attack on each and all of said orders, as having been obtained through acts of extrinsic fraud. For that purpose they have set forth no acts that constitute extrinsic fraud. (*McLaughlin* v. *Security-First Nat. Bank of Los Angeles,* 20 Cal. App. (2d) 602 [67 Pac. (2d) 726].) Furthermore, they claim that some of the participation certificates were issued in violation of the Corporate Securities Act. (Act 3814, Deering's Gen. Laws.) The question as to whether they were made in violation of said statute was addressed to the probate court when the defendant presented its account showing each particular purchase. In the absence of facts on the face of the probate record showing anything to the contrary, it must be presumed said court found the statutes had been fully complied with. It follows that the third attack made in the defendant's demurrer, ''That said amended complaint as amended does not state facts sufficient to constitute a cause of action,'' should have been sustained.

On the point last mentioned the plaintiffs cite and rely most earnestly on *Morgan* v. *Asher,* 49 Cal. App. 172 [193 Pac. 288]. It is not helpful in the instant case. The facts were different in most material respects. The Morgan case showed facts which, if true, amounted to embezzlement extrinsic to the issue presented to the probate court. It shows on its face that the property so withheld was never administered upon. Here the property in question was the identical property before the court. As distinctly stated by the Supreme Court in its order refusing to order a transfer of that case, ''The present action is, therefore, really one to reopen the settlement of the defendant's account and charge her with property which she is alleged to have fraudulently failed to

return." Clearly, this case presents no such set of facts. *Silva* v. *Santos*, 138 Cal. 536 [71 Pac. 703], is closely parallel to the Morgan case in principle. It was a proceeding in equity to have the account of a guardian opened and to have him charged for moneys received for his ward but not accounted for. ■ In the instant case it is not claimed the defendant has failed or neglected to account for any item. The charge is that it bought certificates not permitted by law and that since the purchase said certificates have depreciated in value. As we have shown no fraud is alleged and if, as claimed by the plaintiffs, the certificates purchased by the defendant have depreciated in value, such fact standing alone does not warrant a court of equity in opening, surcharging, or falsifying the accounts under attack. (1 C. J. Secundum, page 690.) Furthermore, if as trustee, the defendant acted "strictly within the line of his duty, he will be responsible for no loss". (II Perry on Trusts, sec. 847; 65 C. J. 819.)

Other points are made in the briefs but because of the conclusions we have reached on the points above mentioned the additional points need not be discussed.

The judgment appealed from is affirmed.

Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 14, 1937, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 12, 1937.