[Civ. No. 14814. Second Dist., Div. One. Feb. 18, 1946.]

Estate of CHARLOTTE K. CRANE, Deceased. CHARLOTTE JAQUITH CRANE, Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Trustee, Respondent.

94

Goudge, Robinson & Hughes, Edgar F. Hughes and Chas. M. Fueller for Appellant.

Newlin, Holley, Sandmeyer & Coleman, Newlin & Ashburn and A. W. Ashburn for Respondent.

DORAN, J.—The present controversy arose upon the settlement of the 21st and 22d reports and accounts current of respondent bank as testamentary trustee under the will of Charlotte K. Crane, deceased. On November 23, 1920, the probate court distributed to the respondent's predecessor, Los Angeles Trust & Savings Bank, as trustee, property in the amount of $364,138.90, of which one third was to be administered for the benefit of appellant Charlotte Jaquith Crane. The will in question directed that the real and personal property should be disposed of and the proceeds invested in "good interest bearing securities," with full power to sell such securities and purchase others. Since April 1, 1929, the respondent bank, acting as trustee, has filed the annual accounts current in the Crane Trust, which accounts have been settled and approved by the probate court after due notice.

In the year 1925 the Legislature enacted section 104 of the Bank Act (Deering's Gen. Laws, Act 652; Stats. 1909, p. 87, as amended by Stats. 1925, p. 526), which authorized the issuance of participation certificates on trust deeds and mortgages owned by trust companies and departmental banks. Section 104 further provided that "the department owning and holding any such participation certificates *may sell and transfer the same to any department of the bank or to any trust or trusts administered by it and be held therein."* (Italics added.) In 1933, three additional paragraphs were enacted "to define and clarify the rights and obligations" previously created by section 104. The statute then remained intact until 1937 when it was amended so as to eliminate therefrom

the power to sell and transfer such participation certificates to trusts administered by the bank. This amendment, however, contained no provision making unlawful the retention of such certificates in trusts administered by the bank where the same had been previously transferred to such trusts under the original provisions of section 104.

The first reference to participation certificates held by the Crane Trust occurs in the Sixth Account Current filed in 1927, and investments in such certificates are thereafter reported each year up to and including the 21st and 22d accounts filed in 1942 and 1943. The record does not disclose any objection by appellant to any accounts other than the 21st and 22d which are here under consideration. All of such accounts were duly approved.

The present controversy is particularly concerned with two participation certificates issued by the trustee bank in 1931. One of these, known as Trust Participation Series 6800/214, represented a $3,000 investment of Crane Trust money and entitled the owner to a pro rata participation in a promissory note for $275,000, secured by a trust deed covering certain business property located at 8th and Olive Streets in the city of Los Angeles. The loan had originally been made by the trustee bank to Helen Murray Swensen in 1926, at 6½ per cent interest, and in 1933 at a foreclosure sale, the bank bid in the property for $275,000. In 1941 the bank sold this property for $80,000, and the net loss to the Crane Estate resulting therefrom is alleged by appellant to be $2,554.97 plus interest.

Trust Participation Series 6800/215 in which the Crane Trust had an investment of $1,000, related to a $130,000 loan made by the bank to the Wilshire Lodge Building Corporation, at 6 per cent interest, secured by a trust deed or mortgage on property located on West Third Street in Los Angeles. In 1938 this loan was renewed at a reduced interest rate of 2½ per cent, and on November 27, 1941, the bank accepted a deed to the property in lieu of foreclosure. At that time the indebtedness had been reduced to $114,000 plus accrued interest, and the bank's "Trust Mortgage Loan Recommendation," (Objector's Exhibit C) recites that "This loan has been in the workout class for many years . . . . On this basis (2½ per cent interest) the loan has held its own for the past five years but no progress has been made in the way of either liquidating it or improving the income of the

security." Under compromise arrangement recommended, the bank took title not only to the real estate but to the furniture and furnishings of the Wilshire Lodge Building, and leased the same for five years at a rental of $175 per month.

Appellant's objections to the 21st and 22d accounts current, were predicated upon the proposition that the participation certificates just mentioned, issued under the provisions of section 104 of the California Bank Act, were "not securities authorized by law or by the terms of the trust." The objector alleged that such participation certificates were void for the reason that no permit for their issuance was ever obtained from the Corporation Commissioner; that the accounts were indefinite, ambiguous and unintelligible in respect to such certificates; that the probate court has no jurisdiction over the subject matter, which refers to acts of the bank "as trustee of several participated trusts mentioned and not as trustee of the above entitled testamentary (Crane) trust." Objection was also made to the allowance of fees to the trustee bank and to its attorneys. The trustee's motion to strike every objection except those which referred to new matter first appearing in the 21st and 22d accounts was granted *in toto*, and at the commencement of the hearing the trial court said, "I have held and do hold, that the other accounts which were approved and allowed heretofore, are *res adjudicata*, and that the evidence that is being admitted now only pertains to the 21st and 22nd accounts current." The court settled the accounts as presented.

As pointed out in the respondent's brief, the appellant's contentions largely "revolve around the doctrine of *res adjudicata* and consist of attempts, direct and indirect, to escape its application at bar." The matter of participation certificates and the investment of trust funds therein by the Security-First National Bank as trustee, has been before the courts of this state upon several occasions. The question of res judicata in reference to participation certificates was directly presented in *Willson* v. *Security-First Nat. Bank*, 21 Cal.2d 705, 713 [134 P.2d 800], where the court said: "The purchase of the participation certificate herein was a trust transaction. We are of the view that the individual liability of the trustee by reason of that transaction, whether as purchaser or seller, was involved in and concluded by the accounting decree." The following language of the court at

page 714 of the Willson case is particularly applicable: "The plaintiff further contends that the decree of the probate court in an accounting proceeding cannot determine the validity of securities, . . . . The question on the settlement of the trustee's account is whether the trustee shall be individually liable for the amount of trust funds expended for the certificate. For the purpose of determining this monetary liability the probate court can pass upon the validity of the security, even though such determination, binding as between the trustee and beneficiary, would not conclude a third party who had issued and sold the security."

Section 1123 of the Probate Code provides that a decree made on the settlement of a trustee's account, "when it becomes final, shall be conclusive upon all persons in interest." This section was referred to and followed in *McLaughlin* v. *Security-First Nat. Bank*, 20 Cal.App.2d 602, 604 [67 P.2d 726], an equity action involving participation certificates, and the court held that "In the premises, the decrees confirming the accounts were conclusive on the plaintiff; the probate court could give him no relief whatever." There, as here, the objections were made that the certificates were void because issued without a permit from the Corporation Commissioner. In *Estate of Pratt*, 119 Cal. 156 [51 P. 47] it was held that when a trustee's annual accounts have been settled and approved, items allowed in a previous account cannot be examined into upon the settlement of a succeeding annual account. In this connection, it is to be noted that, in the present case appellant did not file an action in equity asking relief on the ground of extrinsic fraud as was done in the McLaughlin and other cases, but merely attacked the investment by way of objections to the 21st and 22d accounts current.

Appellant's brief concedes that "There are several decisions . . . in which the doctrine of *res adjudicata* was held to apply to orders settling accounts covering trust participation certificates issued by this same trustee, but it is our fervent contention that those decisions are not controlling in view of the many new points of attack raised in the present case."

Appellant's argument that "The participating trust certificates having been issued without a permit (from the Corporation Commissioner) are void" and that therefore the doctrine of res adjudicata is inapplicable, must be held untenable in view of the decision in *Ormerod* v. *Security-First Nat. Bank*, 21 Cal.App.2d 362, 367 [69 P.2d 469] where the court

said: ''The question as to whether they were made in violation of said statute was addressed to the probate court when the defendant presented its account showing each particular purchase. In the absence of facts on the face of the probate record showing anything to the contrary, it must be presumed said court found the statutes had been fully complied with.'' The Supreme Court denied a hearing in the Ormerod case. The res judicata theory as developed in these and other cases, seems particularly apropos to the present situation where investments in participation certificates had been regularly reported to and approved by the probate court from 1927 to 1942 without objection.

The appellant further affirms that ''The trustee cannot rely upon the doctrine of *res adjudicata* to prevent a determination of the lawfulness of the investments because the trustee in both the twenty-first and twenty-second reports tendered the issue of the lawfulness of the trust participation investments and waived the benefit of any previous determination.'' This contention appears to be based upon the conventional statement in the accounts that ''all investments made for said trust are in securities authorized by law or by the terms of said trust,'' etc. However, as noted in respondent's brief, since these accounts specifically relate to trust activities during definite, annual account periods, the language used, ''obviously refers to investments made during the accounting period and presented for approval for the first time.'' The retention of such securities was submitted to the court from period to period, but not their original purchase. The record discloses no waiver of the res judicata defense, and no reopening of any adjudicated issues. Certainly, at the trial, this defense was presented and insisted upon at every opportunity.

It is also claimed by the appellant that since it appears ''that the trust funds were permitted to be invested in void, illegal and unauthorized securities, the order (settling the trustee's account) is void as to those investments.'' It is then argued that since a void order is a nullity, such order cannot be deemed res judicata. This argument is apparently based upon the dissenting opinion of Mr. Justice Carter in *Willson* v. *Security-First National Bank*, 21 Cal.2d 705, 715, [134 P.2d 800], wherein this justice, disagreeing with the other six justices who held that an order settling the trustee's account was res judicata, said: ''A transaction falling with-

in the terms of the Corporate Securities Act is declared . . . to be void if no permit therefor is obtained (Stats. 1917, p. 673, sec. 16.) The order of the probate court approving that transaction, is also void, if the rule stated in *Hunter* v. *Superior Court,* 36 Cal.App.2d 100 [97 P.2d 492], is followed. It is there declared that a judgment based upon a void contract is itself void.'' Whatever merit may exist in such dissenting opinion, obviously it cannot constitute authority in favor of .appellant's claim. Moreover, the Hunter case cited in the dissenting opinion, and relied upon by appellant, bears no resemblance to the present controversy; it related neither to trustee's accounts nor to participation certificates. And to apply the quoted statement that ''a judgment based upon a void contract is itself void,'' generally, or in respect to the present situation, would be demonstrably unsound. ''Jurisdiction, being the power to hear and determine, implies power to decide a question wrong as well as right,'' (15 Cal.Jur. 81) and, says the same work at page 82, ''Mere error in the exercise of power does not invalidate the judgment.'' Judgments which were clearly erroneous in reference to trust matters, have nevertheless been held conclusive. (*Manning* v. *Bank of California,* 216 Cal. 629 [15 P.2d 746] ; *Crew* v. *Pratt,* 119 Cal. 139 [51 P.38].)

█ The claim that the trustee's purchase of participation certificates violated the testamentary requirement that trust funds be invested in ''good interest-bearing securities,'' must likewise be disposed of under the res judicata doctrine. ''It is manifest,'' as pointed out in respondent's brief, ''that the Probate Court should not and would not approve any investment or reinvestment of trust funds without consulting the decree of distribution and determining whether same was consistent with its provisions.'' Doubtless, the beneficiary would have entered no complaint had the investment not depreciated in value, yet, as said in *Ormerod* v. *Security-First Nat. Bank,* 21 Cal.App.2d 362, 368 [69 P.2d 469], ''such fact standing alone does not warrant . . . opening, surcharging, or falsifying the accounts under attack. (1 C. J. Secundum, page 690.) Furthermore, if as trustee, the defendant acted 'strictly within the line of his duty, he will be responsible for no loss.' (II Perry on Trusts, sec. 847; 65 C.J. 819.)'' █ Appellant presents the point that ''Section 104 of the Bank Act (enacted in 1925) in permitting a trust company as trustee to deal with itself is against common law and the stat-

utory rules, and is class legislation which is in violation of Section 21 of Article 1 and/or Section 25 (19) of Article IV of the State Constitution." It is also urged that section 104 of the Bank Act, prior to its amendment in 1933, "was so incomplete and indefinite as to be inoperative and void." The constitutionality of section 104 was raised in the case of *Willson* v. *Security-First Nat. Bank,* 21 Cal.2d 705 [134 P.2d 800], heretofore referred to, by way of a proposed amendment to the complaint, alleging that the participation certificate in question purported to be issued under section 104. The court in that case refused to authorize the amendment, holding that the order of the probate court settling the trustee's account was res judicata,—the precise point involved in the present controversy. In *Estate of Smith,* 112 Cal.App. 680 [297 P. 927], upholding the constitutionality of section 25 of the Bank Act as against a similar contention, the court said: "It has been heretofore decided that where legislation affects banking corporations doing business as testamentary trustees as a class and such classification is not unreasonable, there is no valid constitutional objection to such legislation (*Estate of Barnett,* 97 Cal.App. 138 [275 P.453].) We find nothing unreasonable in such classification here and in our opinion there is a natural and intrinsic difference between departmental bank trustees and other trustees. The various sections of the Bank Act relating to capital, surplus, reserves, securities, inspection and the like . . . surround every activity of departmental bank trustees with safeguards not required of trustees generally." In this case a hearing in the Supreme Court was denied.

"The right to question the constitutionality of a statute may be waived," observes the court in *Hershey* v. *Reclamation District No. 108,* 200 Cal. 550, 564 [254 P. 542], " 'It is a general rule applicable in civil cases that *a constitutional question must be raised at the earliest opportunity* or it will be considered as waived.' (12 C. J. 785)." (Italics added.) In the instant case it cannot be said that appellant has raised the constitutional question "at the earliest opportunity." In point of fact, the present attack on section 104 did not come until some fifteen years after the issuance of the participation certificates in 1931. Yet the question of constitutionality, if any there was, must have been as fully apparent during this long period as it was when appellant for the first time objected

to the trustee's 21st account current. Nor is any claim made that this matter could not have been discovered and presented at an earlier date. The record does not even disclose that remonstrance of any kind was previously registered or that the bank was requested to substitute other securities for the participation certificates.

In this connection it must also be noted that when appellant did finally take exception to the trustee's activities in 1943, the amended objections upon which the matter was heard, contain no assertion that the section in question was unconstitutional. On the contrary, the specific objection was that the participation certificates issued under section 104 "are not securities authorized by law or by the terms of the trust." In apparent explanation of such objection, the complaint is then made, not that the section was unconstitutional, but "that no permit was ever obtained . . . from the Corporation Commissioner,"—obviously quite a different objection. If the appellant then had in mind the constitutional question so extensively argued in the briefs, it is indeed strange that such an important objection should not have been positively and concretely presented to the trial court. The briefs refer to no place in the record where any constitutional question was raised at the trial.

As said in 5 California Jurisprudence 613, "The courts do not determine constitutional questions unless a determination is absolutely necessary. . . . Where the record does not present a constitutional question, such question will not be considered. And where the court is not required to pass upon the constitutional question . . ., it has been said that it is not justified in entering into a discussion of its merits." In view of the facts hereinbefore recited, it is deemed unnecessary and improper to further discuss the constitutionality of section 104 of the Bank Act. And, as already noted, the alleged objectionable features of this section, were eliminated by the Legislature in 1937.

The language used in *McLaughlin* v. *Security First Nat. Bank,* 20 Cal.App.2d at page 605 [67 P.2d 726] is not inapplicable to the present case: "We are not passing upon the plaintiff's contention that the certificates in which the defendant invested its trust funds are void, for two reasons. In the first place they are seemingly authorized by section 104 of the Bank Act. . . . The more significant reason . . . is that we do not find it an unanswered one, open to us, on this

appeal. In approving the acts of the trustee in making the investments it had reported, the probate court necessarily had open before it the question of the legality of the investments and the matter of their economic merit as well." As in the Willson and other cases hereinbefore cited, the probate court's approval of the trustee's activities was deemed res judicata, as it must be in the instant controversy. All of the appellant's contentions have received due consideration, but no error is discernible in the orders of the trial court.

The orders appealed from are therefore affirmed.

York, P. J., concurred.

Mr. Justice White deeming himself disqualified did not participate in the decision.

A petition for a rehearing was denied March 18, 1946, and appellant's petition for a hearing by the Supreme Court was denied April 18, 1946. Carter, J., voted for a hearing.