[Civ. No. 24661. Third Dist. May 27, 1986.]

GORDON LAZZARONE, Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Respondent.

582

## COUNSEL

Estelle A. Schleicher, Wilcoxen & Callahan and Gary Callahan for Plaintiff and Appellant.

George W. Coombe, Jr., Winslow Christian and Kristian D. Whitten for Defendant and Respondent.

## OPINION

**SIMS, J.**—Plaintiff Gordon Lazzarone appeals from a judgment dismissing his action against defendant Bank of America NT & SA (hereafter Bank). Plaintiff is beneficiary of a testamentary trust formerly administered by Bank as trustee. After learning his trust corpus had sustained losses during Bank's prior administration, plaintiff brought an action against Bank in superior court for damages for negligence and fraud. The trial court sustained Bank's demurrer without leave to amend.

We conclude plaintiff's complaint is barred by the res judicata effect given to orders of the superior court sitting in probate (hereafter probate court)[1] approving Bank's periodic accountings and discharging Bank as trustee. Since plaintiff has not shown his complaint may be salvaged by amendment, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the beneficiary of a testamentary trust established by his grandfather, Carlo Lazzarone. Bank was appointed trustee on or about December 8, 1971, and remained as trustee until it was discharged on September 1, 1982.

Between 1972 and 1980, Bank filed with the probate court annual accountings and reports respecting its administration of the trust. Bank filed a 10th and final accounting and report, covering the period 1980-1982, after which the assets of the trust were distributed and Bank was discharged as

---

[1]See *Schlyen v. Schlyen* (1954) 43 Cal.2d 361 [273 P.2d 897] at page 375.

trustee. Plaintiff, as beneficiary, received notice by mail of each probate court hearing on each annual accounting and report. At the conclusion of each hearing, the probate court approved each annual accounting and report, including the 10th and final one, and approved and confirmed all acts and transactions of Bank during the period of each accounting.

Each of Bank's reports alleged in pertinent part, "All investments made on property retained in the trust during the current accounting period were in conformity with law or were authorized by the terms of the trust and have been carefully, prudently and in good faith made, purchased or retained for the purpose of serving the best interest of the trust and all persons interested therein." Bank's accountings showed plaintiff's trust funds were invested in part in Bank's common trust funds. The accountings further showed on their face that, for each year except 1976, the common trust funds had suffered capital losses.

Plaintiff filed this action in 1983, after Bank was finally discharged, alleging causes of action for negligence and fraud and deceit based on representations as well as concealment. Plaintiff's first cause of action alleged in pertinent part that Bank negligently and imprudently invested his funds and neglected to inform him of the poor return being achieved on its common trust funds. Plaintiff's second cause of action alleged in pertinent part that Bank falsely and fraudulently represented to plaintiff that Bank's trust funds would provide an ideal environment for the growth of plaintiff's funds. Bank knew such trust funds were yielding one of the lowest rates of return in the nation and a rate of return lower than its own savings accounts. Bank had no reasonable basis to believe its representations were true. Plaintiff reasonably relied on Bank's representations to his detriment. Bank's investment of his trust funds suffered losses.

Plaintiff's third cause of action incorporated the second cause of action and alleged in pertinent part that Bank held itself out as an expert in the fields of banking and management of trust funds. Bank knew these representations to be false. Plaintiff reasonably relied on Bank's representations to his detriment. Once again, plaintiff's damage consisted of the losses incurred on his trust account.

Plaintiff's fourth cause of action was substantially similar to his third cause of action. It, too, alleged that Bank made representations which plaintiff relied upon to his detriment, to wit, losses sustained on investment of his trust funds.

Although plaintiff pleaded causes of action for fraud he failed to plead a cause of action to set aside any of the orders settling the accountings and

reports of the trustee on grounds of extrinsic fraud.[2] (See Prob. Code, § 1123; *Estate of Charters* (1956) 46 Cal.2d 227, 234 [293 P.2d 778].)[3]

Bank noticed a demurrer to plaintiff's complaint on grounds his claims are within the exclusive jurisdiction of the probate court and are barred by res judicata.

The trial court noted it would have sustained the demurrer with leave to amend were it not for Bank's contention the matter should be heard in the probate court. Relying on *Schlyen* v. *Schlyen* (1954) 43 Cal.2d 361 [273 P.2d 897] the trial court concluded plaintiff's claims could appropriately be brought in the probate court and must be brought there due to Bank's timely assertion of the issue in its demurrer. ■■ ■■ ■■ ■■ The trial court ordered Bank's demurrer sustained without leave to amend and entered a judgment dismissing the action.[4] Plaintiff timely filed notice of appeal.

DISCUSSION

I

*Absent Pleadings of Extrinsic Fraud, the Probate Court's Orders Settling Bank's Accounts and Discharging Bank as Trustee Are Entitled to Res Judicata Effect.*

■■ ■■ ■■ ■■ ■■ Plaintiff's principal contention is the trial court erred in sustaining Bank's demurrer without leave to amend because his action was properly brought in superior court sitting outside of probate.[5] ■■

---

[2]The question of what constitutes extrinsic fraud is discussed in part II, *post.*

[3]Statutory references are to the Probate Code unless otherwise indicated.

[4]The trial court erroneously relied on *Schlyen* v. *Schlyen, supra,* to sustain the demurrer without leave to amend. That case holds a demurrer may be used to assert that a matter which should be tried in probate is being wrongfully pursued in another court. (43 Cal.2d at pp. 377-378.) However, if the matter is properly tried in probate, "the trial court should not dismiss the action but should try it as a matter in probate . . . ." (*Id.,* at p. 378.) Here the error is academic because we conclude principles of res judicata preclude trial in probate or anywhere else.

[5]"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

However, both parties have briefed the res judicata issue and we find it dispositive of the appeal. "We . . . are not precluded from sustaining the demurrer on a ground not considered [or considered but not relief upon] by the court below as long as it comes within the four corners of the demurrer, namely, a failure to state a cause of action." (*Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107, 120 [206 Cal.Rptr. 476], quoting *Collins* v. *Marvel Land Co.* (1970) 13 Cal.App.3d 34, 45 [91 Cal.Rptr. 291].)

### A

■ Ordinarily, a demurrer tests the sufficiency of the complaint alone and not the evidence or other extrinsic matters. Thus, a demurrer ordinarily lies only where a defect appears on the face of the complaint. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 895, pp. 334-335.) Affirmative defenses such as res judicata are not properly alleged in a complaint and ordinarily may not be raised on demurrer. (5 Witkin, Cal. Procedure, *supra,* § 895, p. 335.)

However, a complaint may be read as if it included matters judicially noticed. (Code Civ. Proc., § 430.30, subd. (a); see 5 Witkin, Cal. Procedure, *supra,* § 896, p. 337.) Such matters may show the complaint fails to state a cause of action though its bare allegations do not disclose the defect. (See *Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 47 [170 Cal.Rptr. 533].) ■ In this case Bank requested the trial court to take judicial notice of all orders, pleadings, and other matters on file in the matter of the estate of Carlo Lazzarone. The trial court was required to judicially notice those matters upon Bank's request (Evid. Code, §§ 452, subd. (d), 453) and we must do likewise on appeal (Evid. Code, § 459, subd. (a)(1)). ■ Since the res judicata bar appears on the face of the documents judicially noticed, the defense is appropriately considered in reviewing the demurrer. (Code Civ. Proc., § 430.30, subd. (a); *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 496-497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Miller* v. *R.K.A. Management Corp.* (1979) 99 Cal.App.3d 460, 465, 467-468 [160 Cal.Rptr. 164].)

### B

■ As noted, before this action was filed, Bank had obtained from the probate court orders settling its several accounts and reports as trustee. As we shall explain, these orders are entitled to res judicata effect as to issues of trustee negligence and fraud where, as here, the proximate result of that negligence or fraud is manifest on the face of the accountings in the form of economic losses.

■ "The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction." (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810-811 [122 P.2d 892]; see 7 Witkin, Cal. Procedure, *supra,* § 188, p. 621.) The doctrine is applicable in probate proceedings. (*Estate of Charters, supra,* 46 Cal.2d at p. 234; 7 Witkin, Cal. Procedure, *supra,* § 231, pp. 668-669.)

Ordinarily, res judicata is a judicially created doctrine with two principal aspects. (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 329-330 [161 Cal.Rptr. 502, 605 P.2d 10]; *Harman* v. *Mono General Hospital* (1982) 131 Cal.App.3d 607, 614 [182 Cal.Rptr. 570].) In its primary aspect the doctrine operates as a bar to a second suit between the same parties on the same cause of action. The doctrine also comes into play in situations involving a second suit, not necessarily between the same parties, based upon a different cause of action where it operates as a conclusive adjudication as to such issues in the second action as were actually litigated or determined in the first action. This second aspect of the doctrine is commonly termed collateral estoppel. (*Ibid.;* see 7 Witkin, Cal. Procedure, *supra,* §§ 188-189, pp. 621-623.)

■ The res judicata effect given orders settling trustee accounts is established by statute. Section 1120 gives the probate court authority to issue orders settling trustees' accounts and passing on acts of trustees. (See generally *Estate of Bissinger* (1964) 60 Cal.2d 756, 765-769 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 254, p. 5757.) The conclusiveness of such orders is specified in section 1123,[6] which provides: "A decree rendered under the provisions of this chapter, when it becomes final, shall be conclusive upon all persons in interest, whether or not they are in being." (See *Estate of Charters, supra,* 46 Cal.2d at pp. 234-235.) Since in this case we are applying section 1123, and not a judicially created version of res judicata, we need not consider whether the doctrine of res judicata operates in its primary aspect as a bar or as a collateral estoppel. Our Supreme Court has characterized the "conclusive" effect provided by section 1123 as "res judicata." (*Estate of Charters, supra,* 46 Cal.2d at pp. 234-235.) We shall use the same terminology.

■ An order settling a trustee's account, like an order settling the account of an executor or administrator, is conclusive as to all matters passed upon but is not binding as to those matters not passed upon. (*Estate of de Laveaga* (1958) 50 Cal.2d 480, 487 [326 P.2d 129]; 7 Witkin, Summary of Cal.

---

[6]Section 1123 is contained in division 3 of the Probate Code on administration of decedents' estates. By its terms it applies to chapter 19 on testamentary trusts.

Law, *supra*, § 254, p. 5757.) In this respect there is no difference between a final account—that is, one made with a view to the immediate termination of the trust—and an intermediate account. (*Security-First Nat. Bk.* v. *Superior Court* (1934) 1 Cal.2d 749, 755 [37 P.2d 69]; *Estate of Charters, supra*, 46 Cal.2d at p. 234; see *Guardianship of Di Carlo* (1935) 3 Cal.2d 225, 234 [44 P.2d 562, 99 A.L.R. 990]; *Estate of Grant* (1901) 131 Cal. 426, 429 [63 P. 731].) Thus, orders approving intermediate accounts of a trustee are given res judicata effect to the extent issues have been passed upon. (*Ibid.*)

Although the order settling the account is not conclusive as to matters which might have been passed upon but were not, it *is* conclusive as to matters which *are* passed upon although some factual or legal arguments which could have been presented on the issue were not presented. (*Henn* v. *Henn, supra*, 26 Cal.3d at p. 331; cf. *Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 429 [95 Cal.Rptr. 860]; 7 Witkin, Cal. Procedure, *supra*, § 257, p. 696.) ▆▆▆ We therefore consider whether, in approving Bank's several accountings and its request for discharge, the probate court passed upon Bank's veracity and its exercise of due care. As we shall see, the probate court necessarily passed upon those issues in the process of approving Bank's accountings. Thus, the probate court's orders are conclusive as to Bank's veracity and its exercise of due care.

We begin with *Ringwalt* v. *Bank of America etc. Assn.* (1935) 3 Cal.2d 680 [45 P.2d 967], a case arising out of the great depression. There, it was alleged that Bank of America, as executor of a decedent's estate, failed to timely sell the estate's shares of stock in Bank of America's own parent corporation in an effort to avoid depressing the market value of its parent's shares. It was alleged the Bank—as here—retained the shares while their value continued to fall. (Pp. 682-683.) Bank's final account revealed it never sold the stock. (P. 684.) After the time to appeal from the decree of distribution had passed the plaintiffs brought an action for damages.[7] (P. 682.) Upholding the sustaining of a demurrer without leave to amend, our Supreme Court held the plaintiffs' claims should have been raised at the time of the petition for decree of distribution: "The fact that the executor had not sold the stock was manifest, in the usual course of things, on the face of the final account and petition for distribution as well as in the decree of distribution. If it were properly surchargeable for negligence in failing to sell or for failure to sell, that issue should have been heard at that time, . . . ." (P. 684.)

---

[7] It is unclear from the opinion whether the claims were premised on Bank's negligence or fraud or both.

*Ringwalt* was soon followed by *Carr* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 366 [79 P.2d 1096, 116 A.L.R. 1282], another case spawned by the great depression. There, the decedent, a Bank of America vice president, had created in his will several trusts for his children. He named the bank as executor of his estate and also as trustee of his testamentary trusts. (P. 367.) As in *Ringwalt,* the estate in *Carr* consisted in large part of Bank of America's parent corporation's stock. (*Ibid.*)

The will provided the trusts should be funded with cash. However, the bank filed a petition requesting that the trusts be funded with stock, rather than cash, due to the allegedly low market value of the stock. The value of the stock continued to decline. Nonetheless, the Bank obtained the parties' consent to retain the stock as a trust asset. Ultimately the probate court settled the Bank's account as executor. (11 Cal.2d at p. 369.)

The beneficiaries thereafter filed actions for damages against the bank alleging, inter alia, the bank negligently and fraudulently refrained from selling the shares owned by the estate. (*Id.,* at p. 370.) In a court trial, judgment was entered for the bank. (*Ibid.*) Affirming the judgment of the trial court on the ground the claims were barred by res judicata, our Supreme Court explained that the probate court "*was possessed of the power and charged with the duty of scrutinizing with care the accounts of the executor, and inquiring generally into the truth and accuracy of the facts set forth therein, . . .*" (*Id.,* at p. 373, italics added.) "It was apparent to the probate court from the documents presented upon the executor's account and petition for final distribution," said the court, "that the respondent bank had retained said shares of stock during the administration of the estate and that they had greatly depreciated in value."[8] (*Ibid.*)

In *McLellan* v. *McLellan* (1941) 17 Cal.2d 552 [110 P.2d 1034] our high court explained that "The basis of this decision [in *Carr*] is that the law charges the probate court with the duty of scrutinizing the accounts of the [in that case] executor and determining the issues presented by a petition for distribution, and where none of those issues are withdrawn from judicial investigation, the determination upon them is conclusive in favor of the executor and also the testamentary trustee." (P. 554.) The "issues presented" by the petition include not only the account's arithmetical accuracy but also whether the trust has been mismanaged. (*Ibid.*) Approval of the account thus negates a claim of mismanagement. (*Ibid.*)

---

[8]The court also noted that, because the agreement to retain the shares was presented to the probate court for its approval, any fraud if proven would be intrinsic rather than extrinsic. (*Carr* v. *Bank of America etc. Assn., supra,* 11 Cal.2d at p. 374.) The court concluded the order settling the bank's account as executor was conclusive and was not vitiated by extrinsic fraud. (*Id.,* at p. 374; see *Estate of Charters, supra,* 46 Cal.2d at p. 234.)

The instant case is controlled by *Ringwalt, Carr,* and *McLellan.*[9] Here, as in *Carr,* plaintiff is alleging negligence and fraud on the part of the trustee. Here, as in *Carr,* Bank's accountings disclosed that its investments in its common trust funds had suffered losses. ▮▮▮ ▮▮ ▮ ▮▮ However, the probate court, in the exercise of its duty to scrutinize Bank's management of the trust with care (*McLellan, supra,* 17 Cal.2d at p. 554; *Carr, supra,* 11 Cal.2d at p. 373), necessarily determined that Bank had carefully and prudently managed the trust.[10] This determination, in turn, necessarily encompassed a rejection of any claims that the trustee had defrauded plaintiff, a beneficiary.

Plaintiff relies on *Estate of Howard* (1976) 58 Cal.App.3d 250 [129 Cal.Rptr. 836] for the proposition his action is not barred by res judicata because the probate court did not in fact pass upon the issues of negligence and fraud. However, plaintiff's reliance is misplaced.

*Howard* is readily distinguishable because there the probate court issued a memorandum decision which made clear it was *not* considering trustee misconduct issues. The probate court's memorandum stated: "'The Court finds the accounts in order and proper, accounting wise. *Disputes about propriety of actions are or may be the subject of another type of litigation, but the accounts are in order. . . .'*" (58 Cal.App.3d at p. 254; italics added.) Responding to the appellant's fears the probate court's order would present a res judicata bar to subsequent litigation the court of appeal stated in dictum that, because the probate court acknowledged it was *not* passing on any misconduct issues, its decree would not preclude later litigation of them. (Pp. 257-258.)

Similarly, in *Estate of de Laveaga, supra,* 50 Cal.2d 480 the respondent executrix of the estate of a life tenant of a testamentary trust claimed the life tenant (and now her estate) was entitled to the income from the trustor's estate during the period of probate administration. (Pp. 485-486.) The pro-

---

[9] Of like effect is *Perna* v. *Bank of Amer. N. T. & S. Assn.* (1938) 28 Cal.App.2d 372, 376-377 [82 P.2d 605]. *Carr* was recently followed in *Morales* v. *Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307 [160 Cal.Rptr. 239], where the court stated "An order settling an executor's account is res judicata and conclusive against a subsequent claim of liability against the executor for negligence or fraud, and such determination is binding on all the parties interested in the estate." (P. 313.)

[10] *McLellan* and *Carr* make clear that the probate court has a duty *imposed by law* to inquire into the prudence of the trustee's administration. This law-imposed duty would exist irrespective of whether the trustee's petition alleged administration of the trust had been lawful and prudent. However, in the instant case, Bank's reports asserted in pertinent part that all trust investments had been carefully and prudently made. The fact that certain of Bank's investments had suffered losses did not preclude the probate court's approval of the accountings and reports. A trustee has no duty to guarantee the success of trust investments. (See *Neel* v. *Barnard* (1944) 24 Cal.2d 406, 418 [150 P.2d 177].)

bate proceeding was resolved by distributing the entire trust share (one-third of the estate) to the trust with no allocation made between original corpus and predistribution income. There was no requirement that any allocation be made in the probate proceeding, and no such allocation was made. During the period of trust administration the trustee had filed several accounts but they, like the decree of distribution, made no allocation between corpus and income. Apparently, no such allocation was ever required.

On appeal the remaindermen of the trust claimed the executrix's claim was barred by the res judicata effect of the decree of distribution and the several orders settling the trustees' accounts. Our Supreme Court disagreed, reasoning the allocation of income issue was never presented or passed upon in any of the prior proceedings. (50 Cal.2d at pp. 486-487.)

We find *de Laveaga* and *Howard* entirely consistent with our result. Those cases stand for the proposition an issue which is *not* passed upon in the prior order carries no res judicata effect. Here, as in *Ringwalt* and *Carr*, the losses of which plaintiff complains were fully disclosed in the accountings presented to the probate court. Of necessity, the probate court inquired generally into the truth and accuracy of the facts presented in the accountings and the propriety of the trustee's management of the trust. (See *McLellan*, *supra*, 17 Cal.2d at p. 554; *Carr, supra*, 11 Cal.2d at p. 373.) By approving the several accountings and discharging the trustee the probate court conclusively determined that, despite the losses, Bank's management of the trust was lawful and prudent. ■ The probate court's orders settling the trustee's accounts and reports and discharging the trustee are entitled to res judicata effect unless they are vitiated by extrinsic fraud. (§ 1123; *Carr, supra*, 11 Cal.2d at p. 374; *Ringwalt v. Bank of America etc. Assn.*, *supra*, 3 Cal.2d at p. 684; see also *Willson v. Security-First Nat. Bk.* (1943) 21 Cal.2d 705, 709 [134 P.2d 800]; *Estate of Crane* (1946) 73 Cal.App.2d 93 [165 P.2d 940]; *Ormerod v. Security-First Nat. Bank* (1937) 21 Cal.App.2d 362 [69 P.2d 469]; *McLaughlin v. Security-First Nat. Bk.* (1937) 20 Cal.App.2d 602 [67 P.2d 726].)

## II

*The Complaint Does Not Plead Extrinsic Fraud and Plaintiff Has Shown No Reasonable Possibility of Amendment*

■ Where a judgment has been obtained through *extrinsic* fraud it may be set aside, though long since final, by independent suit in equity. (*Neubrand v. Superior Court* (1970) 9 Cal.App.3d 311, 317 [88 Cal.Rptr. 586].) In *Estate of Sanders* (1985) 40 Cal.3d 607 [221 Cal.Rptr. 432, 710 P.2d 232], our Supreme Court recently held an executor committed extrinsic fraud

when he repeatedly assured an heir that an estate was being handled properly and impliedly represented, in response to a specific inquiry, that there was no reason to attend a probate hearing.[11] Said the court, "The seminal definition of extrinsic fraud is found in *United States* v. *Throckmorton* (1878) 98 U.S. 61, 65-66 [25 L.Ed. 93, 95]: 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as *by keeping him away from court*, a false promise of a compromise; *or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff;* or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side, these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the formal judgment or decree, and open the case for a new and fair hearing. [Citations.] [¶] In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practised directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court.'" (P. 614, italics added; see also *Gale* v. *Witt* (1948) 31 Cal.2d 362, 365-367 [188 P.2d 755].)

A second species of extrinsic fraud has also been found where fiduciaries have concealed information they have a duty to disclose. (See, e.g., *Adams*

---

[11]The facts in *Sanders* are set forth more fully in the court's opinion as follows: "After a memorial service for Mrs. Sanders on January 23, 1983, Sara initiated a conversation with Sutton in which they discussed Mrs. Sanders' will, her Market Street property, and the estate in general. Sara asked Sutton about the Market Street property, how the tax obligations were being paid and whether she or the boys would be responsible for any taxes or other expenses. Sutton did not respond to her specific inquiries, but repeatedly assured her *that he would take care of everything and that she had no responsibilities in the matter.* He also told her that *he would work with the lawyer to guarantee that everything was handled properly and that she had no reason to call or contact his attorney, whom he had retained for the probate proceedings.* Sutton told her *not to worry or concern herself with the estate, he would see to it that everything was in order.* He also told her that Mrs. Sanders' will had been put into 'legal form' in order to avoid any problems in probate. He did not tell her that in putting the will into 'legal form' the dispositive provisions had been revised so that he, rather than the boys, would inherit most of the estate. He again emphasized that if he or the attorney needed anything from her, they would contact her. On her drive home from the memorial service, Sara remembered thinking how knowledgeable Sutton was and how fortunate she and the boys were to have him taking care of all the details. She was thankful that he was saving them from going through the same 'trials and tribulations' they experienced after her husband's death five years before.

"On February 9, 1983, Sutton filed a petition to probate the will and for letters testamentary. A formal notice of the death and of a hearing on Sutton's petition was mailed to and received by appellants. Upon receipt of the notice, *Sara called Sutton and asked if it was necessary for her to do anything at that time. He again assured her that everything was fine—he and the lawyer were handling the matter, and the boys' interests were well represented. Appellants did not attend the hearing.*" (*Estate of Sanders, supra,* 40 Cal.3d at pp. 611-612, italics added.)

v. *Martin* (1935) 3 Cal.2d 246, 248 [44 P.2d 572]; *In re Marriage of Brennan* (1981) 124 Cal.App.3d 598, 601 [177 Cal.Rptr. 520]; *Morgan* v. *Asher* (1920) 49 Cal.App. 172, 176-179 [193 P. 288].) This variety of extrinsic fraud recognizes that, even if a potential objector is not kept away from the courthouse, the objector cannot be expected to object to matters not known because of concealment of information by a fiduciary.

 Here, plaintiff's complaint nowhere alleges any conduct by Bank which prevented him from having his day in court to challenge the propriety of Bank's investments. Plaintiff did not allege Bank encouraged him not to attend the hearing or suggested he not make a claim. Nor did plaintiff allege Bank obtained probate court approval of its accounting in secret or in the absence of required statutory notice. Nor did plaintiff allege Bank in effect told him it would look out for his interest in the judicial proceeding. (Compare *Estate of Sanders, supra,* 40 Cal.3d at p. 614.) As in *Gale* v. *Witt, supra,* 31 Cal.2d at page 367, "there is no allegation that the [plaintiff was] not given the required notice of the hearing on the petition . . . . Nor [does plaintiff] charge that [he] did not have knowledge of all of the proceedings in connection with the administration of [his trust.]" (See also *Tobelman* v. *Hildebrandt* (1887) 72 Cal. 313, 316 [14 P. 20].)

Plaintiff does allege Bank concealed from him the poor rate of return on Bank's investments. However, he does not allege Bank concealed any trust assets or trust losses from the probate court. (Compare *Adams* v. *Martin, supra,* 3 Cal.2d at p. 248; *Morgan* v. *Asher, supra,* 49 Cal.App. at pp. 176-179.) Indeed, in his brief plaintiff concedes Bank's accountings filed with the court show the losses in the trust accounts. Having received notice of these accountings, plaintiff is charged with the information disclosed by them. Had plaintiff availed himself of the opportunity to attend any of the hearings on the accountings, he would have seen that the accountings showed his trust funds had sustained economic losses. The fact of losses, in turn, should have prompted him to inquire further into the possibility of negligent or fraudulent conduct by Bank. Once plaintiff "became aware of facts which would make a reasonably prudent person suspicious, [he] had a duty to investigate further, and [he] was charged with knowledge of matters which would have been revealed by such an investigation." (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 875 [191 Cal.Rptr. 619, 663 P.2d 177].) This is so even though Bank occupied the position of a fiduciary. (*Id.,* at pp. 874-875.) Thus, plaintiff was properly chargeable with knowledge of easily ascertained matters, such as the performance of Bank's trust funds as compared with those of other financial institutions.

Plaintiff relies particularly on *In re Marriage of Brennan, supra,* 124 Cal.App.3d 598, where a husband fraudulently persuaded his wife to enter

into a stipulation dividing their community property. Husband misrepresented the extent of the couple's community property thus deceiving wife into accepting less then her rightful share. (Pp. 601-603.) The parties appeared in court only for approval of the stipulation which had the effect of "settling the entire case." (P. 601.) Husband never informed the trial court of the true extent of the community property and allowed the court, along with his wife, to believe the true facts were as represented in the stipulated settlement. In reversing the trial court's denial of wife's motion to set aside portions of the interlocutory judgment the court reasoned the husband's misrepresentations "were designed primarily to prevent a trial of the issues normally contested in a dissolution proceeding." (P. 606; compare *Flores* v. *Arroyo, supra,* 56 Cal.2d at pp. 494-496.)

*Brennan* is distinguishable in that the settlement agreement presented to the court wholly concealed community assets and therefore prevented wife from litigating their existence or value. Here, Bank informed the probate court of the true status of the trust accounts and of the losses they had incurred. The Bank's submission to the court therefore provided plaintiff with information sufficient to put him on notice of his fraud claims. Plaintiff's complaint fails to allege extrinsic fraud. (*Gale* v. *Witt, supra,* 31 Cal.2d at p. 367.)

Plaintiff contends his complaint may be amended to show Bank's extrinsic fraud. In reviewing this argument, we shall apply two rules. The first is that the burden of proving a reasonable possibility of a saving amendment is squarely on the plaintiff. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The second is that the facts constituting fraud must ordinarily be pleaded with particularity. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660].) While this rule is not always applied with rigor (*id.,* at p. 217), we believe it is appropriately invoked where plaintiffs sue in damages with respect to matters previously heard in probate. A lax rule allowing the vague pleading of extrinsic fraud would open the door to the wholesale avoidance of probate proceedings and to the relitigation on the law side of the court of matters properly heard and resolved in probate.

Plaintiff first suggests he can plead that Bank committed extrinsic fraud by sending him a statutory notice of hearing (§§ 327, 328), on a standard Judicial Council form, which stated in pertinent part that "this notice does not require you to appear in court, . . . ." There are two answers to this absurd suggestion. First, the disputed notice was prepared by the Judicial Council and executed by the clerk of the court, not by Bank. Any representations contained in the notice are not Bank's doing. Second, as-

suming the representations are somehow attributable to Bank, they are simply those required by law. Any contention Bank sent plaintiff the notice with intent to deceive him into waiving his right to attend the hearing is simply frivolous.

■ Plaintiff suggested at oral argument he could amend his complaint to allege Bank "prevented" his attending the hearing on the trustee's accounting by telling him it was properly handling his trust funds. (See *Estate of Sanders, supra,* 40 Cal.3d at p. 614, quoting *United States* v. *Throckmorton, supra,* 98 U.S. at pp. 65-66 [25 L.Ed. at p. 95].) However, as its facts make clear (see fn. 10, *ante), Sanders* does not stand for the proposition that an executor's or trustee's representation an estate is being properly administered constitutes extrinsic fraud excusing attendance at a probate hearing. In order to assert extrinsic fraud in this context, the plaintiff must be led to believe his interest will be looked after *in the judicial proceeding.* (See *Estate of Sanders, supra,* 40 Cal.3d at pp. 612-613; see also *Gale* v. *Witt, supra,* 31 Cal.2d at pp. 365-367.)

By plaintiff's theory, Bank's allegedly false statement that it was properly handling trust funds would suffice to avoid the res judicata effect of a probate order. However, nearly all executors and trustees expressly or impliedly represent that they are lawfully doing their jobs. Consequently, as a practical matter, plaintiff's view would simply allow the widespread avoidance of probate hearings by aggrieved parties who could assert plaintiff's theory to avoid the res judicata effect of probate orders. That result, in turn, would inject an unacceptable degree of uncertainty into the business of administering trusts and estates. Consequently, we will not promulgate a rule containing such potential for the erosion of the jurisdiction of the probate court. We conclude Bank's statements do not constitute extrinsic fraud as a matter of law.

■ Plaintiff also suggested at oral argument he could plead that Bank conspired with unidentified other parties to prevent him from going to court. However, this vague allegation does not meet the requirement that the facts constituting extrinsic fraud be pleaded with specificity.

■ We recognize the trial court was inclined to grant plaintiff leave to amend his complaint had it not felt the demurrer was properly sustained without leave to amend on other grounds. However, none of plaintiff's proposed amendments come close to alleging extrinsic fraud. Considering all circumstances, we conclude it is not reasonably possible plaintiff can amend his complaint to allege extrinsic fraud sufficient to set aside the orders of the probate court. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.) Defendant's demurrer was therefore properly sustained without leave to amend.

## Disposition[12]

The judgment is affirmed.

Sparks, Acting P. J., concurred.

A petition for a rehearing was denied June 20, 1986.

---

[12]Justice Regan heard oral argument in this matter but recused himself from consideration of the cause on account of circumstances arising after oral argument.