[S. F. No. 15656.   In Bank.—June 1, 1938.]

PHILIP DAVIS CARR, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Hubert Wyckoff, Jr., for Appellant.

Sullivan, Roche & Johnson, Keyes & Erskine, Rea, Free & Jacka, Louis Ferrari and G. D. Schilling for Respondent.

CURTIS, J.—This litigation is the outgrowth of the financial misfortunes of the Carr family resulting from the 1929 stock market crash and the falling value thereof of Transamerica stock. The basic question is whether or not the appellant, Philip Carr, can recover from the Bank of America, acting as executor of the will of his father, Harry Cummings Carr, and acting as trustee of a trust created by said will for said Philip Carr, as beneficiary, for the loss occasioned by the failure of the bank to sell Transamerica stock until it was so devaluated that the purposes of the trust could not be fulfilled.

The facts are as follows: Harry Cummings Carr from 1903 to 1927 was a banker in Porterville. In that year he became vice-president of the Bank of America in San Francisco and removed his family residence to Palo Alto. On August 23, 1929, he died testate, leaving a widow, Ethel Carr, two adult sons, John and Jesse, and two minor children, Harriette, then 19 years of age, and Philip, then 17 years of age. His estate, which was but little indebted, was appraised as of the date of his death at $120,103.77. $109,532.63 thereof consisted of 1961 shares of Transamerica stock. The will of decedent appointed the Bank of America executor and also trustee of certain trusts created therein. The will created four trusts for the benefit of the two minor children; a $7,000 educational trust for each, the income and principal to be used for their education; a $20,000 trust for Harriette with payment of the

income to her for life and the principal to her issue; and a $15,000 trust for Philip, the income to be paid to him until he reached the age of 25 years and then the principal to be distributed to him. The will also left $15,000 to each of the adult sons, which amount had been received by them as advancements prior to his death. His wife was named as residuary legatee. He had previously made a gift in contemplation of death to her of real and personal property amounting to some $21,321.85, and she also received insurance in the amount of $37,000 upon his death. The will was admitted to probate on September 23, 1929, and the bank thereupon qualified as executor. On October 25, 1929, occurred the stock market crash. The following table shows the subsequent devaluation of the Transamerica stock:

| | |
|---|---|
| August 23, 1929 (date of decedent's death) | $109,532.63 |
| May 29, 1930 | 81,000.00 |
| August 30, 1930 | 45,616.50 |
| September 30, 1930 | 38,013.75 |
| December 31, 1930 | 24,790.25 |
| December 31, 1931 | 4,905.00 |
| June 6, 1934 (date of filing action) | 11,000.00 |

On May 29, 1930, the estate, except for the payment of a deficiency income tax of $5,200, assessed by the federal government for the year 1928, was ready to be closed out, and although the market value of the stock had declined to approximately two-thirds of its market value at the time of the death of decedent, the bank at that time could have sold the Transamerica stock owned by the estate for approximately $31,000 in excess of the amounts required to satisfy the trust legacies in full. On that day the bank filed its first and final account of the administration of the estate, and a petition that the Transamerica stock held by the bank as executor be distributed to it as trustee in lieu of the payment of the trust bequests in cash because of the low market value of the stock then prevailing. The petition was set for hearing for June 12, 1930, and was later continued. Thereafter, and before the hearing of the final account and petition, by reason of the continued decline in the value of the stock upon the market, the total market value of the stock owned by the estate became insufficient to satisfy the trust legacies by some $4,000. On August 4th a conference was held in which the trust officer of the Bank of America, and the widow and three

children, Jesse, Harriette and Philip (John being absent from the state) participated to determine what course should be pursued. At this time the Transamerica stock was worth only $44,000 and to close the estate there was required $5,200 for an income tax delinquency, plus $49,000 for the trust legacies, or a total of $54,000. On August 30, 1930, an agreement, suggested by the trust officer of the bank, and drafted and prepared by the attorney for the estate, was signed by the widow, as party of the first part, and the two minor children of the deceased, Harriette and Philip, as parties of the second part. A consent to said agreement was signed by the two adult sons, John and Jesse. This agreement provided, in effect that the shares of stock, instead of being sold and the proceeds turned over in cash to the trustee to establish the trusts in part, should be distributed to the trustee and allocated by the trustee to the different trusts in the same proportions as each trust bequest bore to the aggregate thereof as set out in the will. The agreement further provided that the widow should advance to the executor out of her insurance money sufficient money to enable the executor to pay the deficiency income tax and, in order that she might be reimbursed out of the estate for this expenditure, that the shares of Transamerica stock should not be sold until the market value of the shares exceeded the amount necessary to satisfy the trust bequests in full, after which she, at her option, might demand that the stock be sold and the excess turned over to her. The agreement further provided that all of the residue of the estate should be turned over to her. This agreement was presented to the probate court by the bank upon an amended petition for distribution filed on September 20, 1930, and distribution in accordance with said agreement prayed for. The bank also filed at the same time a supplemental account as executor. On September 30, 1930, the probate court made its order settling the bank's account as executor and distributing to the bank as trustee the shares of Transamerica stock instead of cash, subject to the right of Mrs. Carr to cause said shares to be sold when the market price thereof should exceed the aggregate of the trust bequests and to take any excess. The minor children partially completed their college courses under financial limitations and some 462 shares of the Transamerica stock were subsequently sold by the bank as trustee to furnish funds for this purpose.

Thereafter Philip Carr and his sister Harriette disaffirmed said agreement, and filed two separate actions against the bank to recover the cash value of the trusts in their favor, aggregating $49,000, created by the will of their father, less the amounts of money already received by them from the bank in its administration of the trusts.

The complaints charged that the bank as executor negligently and fraudulently refrained during the administration of the estate from selling shares belonging to the estate in order to support the market for similar shares held by the bank as collateral security for loans theretofore made by it, and that the bank as trustee of the trusts created by the will negligently and fraudulently failed during the administration of the estate to apply for partial or final distribution to it of the trust bequests in cash as required by the terms of the will. The complaint further charged, in order to state an extrinsic fraud which would justify the vacating of the decree of final distribution and the setting aside of the order settling the final account of the executor, that the bank, in order to avoid, upon the settlement of the final account, an investigation of whether the executor's account should be surcharged for the loss occasioned by its failure to sell said shares, fraudulently secured an agreement of all the parties interested in the estate providing that the shares should be distributed to the bank as trustee and that the bank should continue to hold the shares in trust, and alleged that the final decree of distribution was made by the probate court in accordance with said fraudulently procured agreement. At the trial of the consolidated actions, the plaintiffs called two witnesses, who had been officials of the respondent bank during the period of time involved here, in an attempt to prove that the bank during the period of administration of the estate following the market crash was fraudulently retaining the estate's shares to support the market for its collateral. An objection by the respondent bank to the admissibility of this testimony was sustained by the court. At the conclusion of the presentation of the plaintiff's case, a motion for a nonsuit was made by the bank, which was denied by the court. The bank thereupon, before any further evidence was taken, submitted the case to the court for its decision upon its merits, and judgment was rendered in favor of the bank. Subsequently the appeal taken from said judgment by Harriette

Carr was dismissed, and there is now before this court only the appeal of Philip Carr.

■ At the very threshold of the appeal, the important question is presented for decision as to whether or not the decree settling the bank's account as executor is *res judicata* and conclusive against the appellant's claims of negligence and fraud. In this action, the plaintiff seeks to hold the bank liable not only in its capacity as executor of the last will and testament of Harry Cummings Carr, deceased, but also in its capacity as trustee of the testamentary trusts created by the will of said deceased, and specifically prays for an accounting and for the removal of said bank as trustee. The solution of this problem, therefore, requires a discussion of whether the order settling the bank's account as executor and for final distribution was conclusive not only with regard to its acts as executor but also with regard to its acts as trustee.

There can be no doubt that if the agreement of August 30, 1930, be eliminated from consideration, the order settling the executor's account is *res judicata* against any claim of liability against the bank in its capacity as executor for negligence or fraud, and such determination is binding upon all the parties interested in the estate, including minors who were not represented at said hearing by a guardian. This is the direct holding of *Ringwalt* v. *Bank of America etc. Assn.*, 3 Cal. (2d) 680, 681 [45 Pac. (2d) 967]. In that case an attempt was made to state a cause of action against the Bank of America, as executor of the last will and testament of Marie Louise Adams, for failure to sell assets of the estate consisting of stock in the respondent bank and the Bancitaly Corporation, which it was alleged depreciated in value during the course of administration of the estate in the sum of $33,211.87. No appeal was taken from the final decree of distribution. The opinion squarely holds that, by virtue of section 1637 of the Code of Civil Procedure, the substance of which is now incorporated into section 931 of the Probate Code, although minors would have had the right to move for cause to reopen an account *before* final distribution, nevertheless when final distribution had occurred and the decree had become final, it was conclusive as to all parties interested in the estate, including minors. The opinion also held that the duty to have a guardian for such minors appointed rested

on the mother who was their natural guardian and that no such duty rested upon the respondent bank. Moreover, the court in that opinion specifically held that the issue of whether or not the bank was properly surchargeable for negligence in failing to sell was before the court and should have been heard upon the settlement of the final account of the bank as executor, as the fact was manifest, in the usual course of things, on the face of the final account and petition for final distribution as well as in the decree of distribution. It is to be noted, however, that in the Ringwalt case the bank simply filed its account and then stood mute and inactive. The opinion in the Ringwalt case expressly states that the court failed to find in the allegations of the complaint "anything done by the respondent bank to prevent, foreclose, or hinder" a hearing of the issue of whether the executor's account was properly surchargeable. ██ Appellant argues that in the instant case the agreement of August 30, 1930, whereby the parties agreed that the shares of Transamerica stock should be distributed to the bank as trustee, and such shares held by the bank for the benefit of the minor beneficiaries in lieu of the cash bequests of the will, as a matter of fact withdrew from the probate court the issue of whether the executor's account was surchargeable, and that the procurement by the bank of the execution of the agreement of August 30, 1930, by the parties interested in the estate, prevented a real hearing of such issue, thereby constituting extrinsic fraud and supplying the allegations lacking in the Ringwalt case of something done by the respondent bank "to prevent, foreclose, or hinder" a hearing upon the issue of the bank's liability, as executor, for negligence and fraud in the administration of the estate. The appellant argues that the fraudulent procurement and the use of the agreement upon settlement of the estate in view of the nondisclosure and concealment of its adverse interest by the respondent bank prevented a real adversary hearing of the executor's account, and this being so, the decree so procured is now vulnerable to attack. The trial court found that the bank did not exercise any dominion or control over the parties interested to procure the execution of the agreement, and this finding finds support in the record. The extrinsic fraud relied upon by the appellant in this regard is therefore necessarily limited to the procurement by the respondent bank of the execution

of the agreement by the minor beneficiary and the nondisclosure and concealment from him of the possibility that the executor's account might be surcharged upon a claim of negligence and fraud in the administration of the estate by the bank, together with the presentation of such agreement to the probate court with no disclosure to the court of the bank's interest adverse to the sale of the shares of Transamerica stock during the administration of the estate and the benefit to the bank of the agreement which would in all probability prevent the sale of the Transamerica shares if the shares continued to decline, since such sale would require a court order and the consent of all the interested parties, including the two adult sons.

In view of the fact that the probate court was possessed of the power and charged with the duty of scrutinizing with care the accounts of the executor, and inquiring generally into the truth and accuracy of the facts set forth therein, and was at absolute liberty to refuse to make the decree of final distribution in accordance with the said agreement if in its judgment the distribution agreed upon by the parties to said agreement was not a proper method of distribution, we cannot agree with the contention of appellant that the issue of the surchargeability of the executor's account was withdrawn from judicial investigation. It was apparent to the probate court from the documents presented upon the executor's account and petition for final distribution, that the respondent bank had retained said shares of stock during the administration of the estate and that they had greatly depreciated in value. It was also within the knowledge of the probate court that during all of the time under consideration the minor beneficiary, appellant herein, was under age and was not represented by a guardian, and that for this reason the accounts of the executor should be scrutinized more closely than if all the parties interested were adults. The agreement was presented to the probate court for its approval, and the question of whether or not such a plan of distribution was advisable and proper, in contravention to the terms of the will creating the trust bequests in cash, was directly presented. The probate court, regardless of the agreement, had the duty to inquire into the fairness of the case, and we must presume that it performed its duty.

Moreover, the agreement itself was presented to the probate court for its approval and for its incorporation into the decree of distribution, and this fact compels the conclusion that any fraud in its procurement, now alleged, was necessarily within the issues of its fairness and the advisability of the approval of such agreement by the probate court, and, even if fraud were proven, it would constitute intrinsic, in contradistinction to extrinsic, fraud. In *Caldwell* v. *Taylor,* 218 Cal. 471 [23 Pac. (2d) 758, 88 A. L. R. 1194], we held: ''It also seems to be the rule that the fraud alleged must not be the fraud which is in effect the issue in controversy, the fraud upon which the cause of action in the former suit was based.'' In the instant case, not only was the issue of whether the bank fraudulently retained the shares during administration presented to the probate court upon the executor's account, but also the question of whether it fraudulently secured the agreement upon the petition for final distribution. It follows that the order settling the bank's account as executor and for final distribution was conclusive with regard to its acts as executor.

Although the respondent bank has filed no account as trustee, and the order settling the executor's account and for final distribution at first blush would not seem to be a bar against a claimed liability against the bank as trustee, nevertheless, there seems to be no escape from the conclusion that the court's negative determination of the issue of the bank's liability as executor upon the ground of negligence and fraud, of necessity, settles that issue when the question of the bank's negligence and fraud as executor is brought into question in the attempt to charge the bank as trustee. An analysis of the trustee's claimed liability for failure to petition for final or partial distribution in order to get the trust assets out of the hands of the executor and into its own hands as trustee is based upon a duty owing by the trustee to prevent the estate from being mismanaged or despoiled during the course of administration. (*Estate of O'Connor,* 2 Cal. App. 470, 473 [84 Pac. 317].) We have no doubt that such a duty rests upon the trustee, but the order settling the executor's account and for final distribution conclusively negatives the charge of mismanagement, negligence or fraud on the part of the bank as executor. If this be true, no duty devolved upon the trustee to move to obtain control of the trust assets. Likewise the issue of whether the trustee was liable as trustee

in not protecting the interests of the minor beneficiaries, in the execution of the agreement of August 30, 1930, must be held to have been conclusively determined in the negative by the order decreeing final distribution inasmuch as that order conclusively determined that the method of distribution therein planned was proper and advisable. That this is the conclusive effect of the order settling the executor's account and for final distribution is established by *Price* v. *Sixth District Agricultural Assn.*, 201 Cal. 502 [258 Pac. 387].

However, the argument is presented that the trustee was liable as an insurer, regardless of any negligence or fraud on the part of the executor, by reason of its abdication of the control of the trust estate by virtue of the agreement of August 30, 1930, wherein it surrendered control of its power of sale if the stocks continued to decline and bound itself to sell only at the option of the widow if the stock should thereafter rise in value. The cases of *Estate of Wood,* 159 Cal. 466 [114 Pac. 992, 36 L. R. A. (N. S.) 252], and *Gaver* v. *Early,* 191 Cal. 123 [215 Pac. 394], are California cases cited in support of this doctrine. These were both cases where the trustee surrendered control of the trust assets to the surety on its bond. These cases are only applicable by analogy, and should not be applied to a trustee before distribution who acquiesces in an attempt by the executor to work out some scheme for the benefit of all the parties interested in the estate. In other words, although the office of trustee devolves upon the trustee upon the death of decedent, this harsh rule should only be applied to a surrender of control by the trustee after the trust funds come into his possession as trustee. In the instant case, the trust estate came to the trustee already burdened by the terms of the agreement of August 30, 1930, incorporated in the decree of final distribution. It cannot be held liable by virtue of the fact that it abided by the terms of said decree.

The judgment is affirmed.

Seawell, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.