Filed 6/29/23  Steinhardt v. Krohe CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ZANDRA STEINHARDT,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTOPHER D. KROHE,<br><br>    Defendant and Appellant. | F084215<br><br>(Super. Ct. No. 17CEPR00902)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Christopher D. Krohe, in pro. per., for Defendant and Appellant.

Tuttle & McCloskey and Daniel T. McCloskey for Plaintiff and Respondent.

-ooOoo-

Christopher Krohe, who is representing himself and is incarcerated, appeals the probate court's order granting respondent Zandra Steinhardt judgment on the pleadings in Krohe's petition against her.  Krohe is the sole remainderman and beneficiary of an irrevocable special needs trust that Steinhardt had administered as trustee for about a decade.  In 2017, the probate court granted Steinhardt's petition to resign as trustee,

thereby approving and settling her accountings, and ratifying her actions as trustee. Although Krohe sent various communications to the probate court, he did not formally contest Steinhardt's petition; nor did he appeal or otherwise challenge the probate court's order. Instead, about three years after the 2017 order, Krohe began submitting ex parte requests to the probate court asserting that Steinhardt had breached her fiduciary duties as trustee. In April 2021, Krohe's petition for breach of fiduciary duty was accepted for filing. The petition alleged various forms of trust mismanagement, including assertions that Steinhardt had filed a false final accounting, diverted trust funds to herself, and took certain pieces of artwork from the trust. The probate court granted Steinhardt judgment on the pleadings, concluding that all of Krohe's claims were barred as res judicata based on the 2017 approval of Steinhardt's first and final accounting, and that Krohe's petition was untimely filed under the three-year statute of limitations. We affirm as to all claims except those regarding the removal of the artwork.

## BACKGROUND[1]

### *The Trust*

In 2007, Krohe's mother, Marla Krohe, formed an "Irrevocable Special Needs Trust" (the Trust) with Steinhardt, her cousin, as trustee. As relevant, the Trust agreement provides that upon Marla's death, the Trust property should be distributed to her then-living issue who have reached the age of 50. Krohe is Marla's only child, and he was 34 years old when she died in 2009. Therefore, under the terms of the Trust, his share continues to be held and administered by the Trust until he turns 50 years old. Upon Marla's death, Krohe became the sole beneficiary of the Trust, which provides for discretionary payments for his health, education, support, and maintenance.

---

[1] The record does not include a reporter's transcript, so this summary is drawn solely from the clerk's transcript.

Through all periods relevant to this appeal, Krohe has been incarcerated at Mule Creek State Prison where he has received goods and payments to his prisoner account from the Trust, arranged for by Steinhardt as trustee.

***Steinhardt's 2017 Petition***

On August 25, 2017, Steinhardt (through counsel) filed in Fresno County Superior Court a petition for acceptance of her resignation as trustee, appointment of a successor-trustee, settlement of her first and final account, and payment of fees, pursuant to Probate Code section 17200.[2] Steinhardt filed with the petition a declaration attaching a complete accounting of the funds of the Trust since its inception. As required by law, Steinhardt's accounting summaries stated the Trust's receipts, disbursements, assets, and liabilities for each fiscal year, supported by detailed schedules itemizing income, losses, sales, and distributions. (§§ 1062, 16063.)

A hearing on the petition was set for October 3, 2017, and copies of the petition and attachments and a Notice of Hearing were served on Krohe in prison on September 18, 2017. Krohe attempted to file what he describes as an "objection" to the accounting and a request to continue the hearing, but on October 2, 2017, the court returned his documents unfiled, explaining that he had not paid the fee to become a party to the case or requested a fee waiver. At the October 3 hearing, the matter was continued to October 31, 2017.

In the meantime, Steinhardt filed a supplemental declaration and additional supporting documents in response to a probate examiner's notes. At the hearing on October 31, 2017, Judge Debra Kazanjian granted Steinhardt's petition. In a written order signed the same day (October 2017 order), the court found that "[n]otice of the hearing was given as required by law" and ordered, as relevant, that (1) Steinhardt's resignation was approved and accepted, (2) the first and final account of the Trust were "settled and approved," (3) "all acts and transactions of [Steinhardt] as Trustee … [were]

---

[2]   All undesignated statutory references are to the Probate Code.

3.

confirmed and approved," and (4) Donald Fischer, a professional fiduciary, would be appointed successor-trustee upon his filing of a bond. Fischer filed a bond on November 2, 2017, and he has been the new trustee ever since.

Krohe did not appear at the October 31, 2017 hearing, and he contends that he was never notified of this continued hearing date or any other event in the case until January 24, 2018, when Steinhardt's counsel served him with a notice of order, attaching the October 2017 order granting the petition. Krohe did not attempt to appeal or otherwise challenge the October 2017 order granting Steinhardt's petition.

***Krohe's Submissions and 2021 Petition***

More than two years later, beginning in August 2020, Krohe resumed attempting to file documents in the case. These documents were returned unfiled for failure to pay the filing fee or request a fee waiver and for being submitted ex parte. By the end of October 2020, Krohe successfully filed an ex parte application with numerous attachments, including a fee waiver request and a petition for breach of fiduciary duty against Steinhardt. Judge Kazanjian held a hearing on the ex parte application in January 2021, with Krohe and Fischer appearing remotely. The court granted Krohe's fee waiver request but informed Krohe that his petition could not be filed as such in its current form because it was submitted as an attachment to the ex parte application. The court continued the matter to April 2021 to allow Krohe to refile the petition on its own.

On April 14, 2021, the court accepted for filing Krohe's petition which is the subject of this appeal. The petition is styled as a petition for breach of fiduciary duty by a trustee, brought under section 17200, subdivision (b)(12). The petition is difficult to decipher and does not set forth distinct causes of action, but as best we can tell from the petition—and Krohe's declaration subsumed within it—Krohe asserted the following. First, he alleged Steinhardt had "filed a false final accounting" in her 2017 resignation petition and had taken money and property from the Trust for her own profit, based on his assessment that the balances on several of the accounting summaries were "off."

4.

Krohe averred he was served with the first and final account on September 18, 2017. By comparing the summary balances against the itemized income and expenses for each fiscal year, Krohe calculated about $17,000 was unaccounted for between 2009 and 2017. From this, Krohe inferred that these sums had been "stolen from the [T]rust" over the years. Second, based on losses shown in the accountings, Krohe alleged Steinhardt mismanaged Trust funds in two respects: by losing some $6,700 in a "risky investment" in a John Hancock Fund, and by unnecessarily incurring about $12,000 in attorney fees paid to a law firm by the name of Dowling & Aaron. Third, Krohe alleged that Steinhardt had improperly removed from the Trust various pieces of art, including two paintings thought to be worth $25,000 each. Four weeks after Marla's death in 2009, Steinhardt began to remove items from Marla's house. At that time, she ignored Krohe's repeated requests to send him photographs and a catalog of all the artwork. Krohe never received a catalog of the art, but at some point Steinhardt informed him that the paintings had been placed in storage. However, when he received the "inventory to the assets property" on December 28, 2017—several months after the accountings were approved by the court—there was no artwork listed on it. In January 2018, Krohe learned from Fischer (the successor-trustee) that there were no paintings or artwork in the storage facility. Relatedly, Krohe also alleged that Steinhardt had failed to store his personal music recordings and recording equipment, which had been at his mother's house.

After a series of hearings on ancillary matters before Judge Brian Arax—who took over the case (likely due to Judge Kazanjian's retirement)—in June 2021, Steinhardt filed her response to the petition. Judge Arax held a hearing on Krohe's petition in September 2021, at which Krohe and Fischer appeared as well as Steinhardt (through her counsel), and the court set the matter for a bench trial to occur in May 2022.

In November 2021, however, Steinhardt filed a motion for judgment on the pleadings and to recover attorney fees. Steinhardt sought dismissal on the grounds that Krohe's petition was attempting to relitigate issues resolved by Judge Kazanjian's

October 2017 order, which had become final and conclusive as to all interested parties; and that Krohe's petition was barred by the statute of limitations, having been filed more than three years after his claims accrued.

### Probate Court's Ruling

The motion was fully briefed, and after a hearing in February 2022, the probate court granted Steinhardt's motion in full. The court agreed with Steinhardt that (1) Krohe's petition was barred under the doctrine of res judicata, specifically collateral estoppel, in light of the October 2017 order; and (2) to the extent the petition raised any new or different issues, it was time barred under the three-year statute of limitations for fraud (Code Civ. Proc., § 338) or breach of trust (§ 16460). As to collateral estoppel, the probate court adopted in full Steinhardt's arguments in support of her motion. The court noted that both Krohe's instant petition and Steinhardt's 2017 petition "addresse[d] the handling of the [T]rust by Ms. Steinhardt"; Krohe was an interested party to the 2017 petition; Krohe received notice of the petition, as previously found by Judge Kazanjian; Judge Kazanjian had "accept[ed] the accounting and ratif[ied] the acts of the trustee"; and after receiving notice of the October 2017 order, Krohe did not appeal it, making it a final ruling as the time to appeal had long passed.

The probate court then went on to find that, in addition, the statute of limitations for Krohe's petition had expired. After listing the petition's various types of allegations, the court found the gravamen of the petition was fraud, and therefore the statute of limitations was three years—whether construed as an action for pure fraud (Code Civ. Proc., § 338) or for breach of fiduciary duty (§ 16460). The court found that Krohe's claims that Steinhardt "mishandled items belonging to Mr. Krohe, misappropriated funds of the estate, and wrongfully took possession of or gave away items of artwork" accrued in the weeks and months following Marla's death in 2009; and those claims were time barred as having "occurred some eleven (11) years before Mr. Krohe's petition." The court found that Krohe's remaining claims based on "commingling funds, filing a false

6.

accounting, wrongful incurring of attorney's fees, diversion of funds, negligent handling of investment account, and failure to account" were also time barred, whether measured from September 18, 2017, when he received the first and final account or from January 24, 2018, when he received the notice of the order approving the accounting. The court noted Krohe's failure to have his petition filed sooner than April 14, 2021—despite his attempts to lodge documents starting in September 2020—was a result of his "obstinate refusal" to pay the filing fee and follow court procedures. The court did not address Krohe's minimal arguments, set forth in his opposition papers, for tolling the statute of limitation under California Rules of Court Emergency rule 9 (Emergency rule 9). (See Cal. Rules of Court, Appendix I: Emergency Rules Related to COVID-19, rule 9.)

Finally, the court exercised its equitable powers to award Steinhardt her attorney fees and costs in defending against Krohe's petition, which the court found "frivolous, without merit and brought in bad faith." These fees and costs were assessed against the Trust.

*Appeal*

The order denying Krohe's petition is appealable, and Krohe timely filed his notice of appeal. (See Code Civ. Proc., § 904.1, subd. (a)(10); §§ 1304, subd. (a), 17200, subd. (b)(12).) At Steinhardt's request, we struck Krohe's initial opening brief for numerous deficiencies. However, we denied Steinhardt's renewed motion to strike Krohe's amended opening brief, leaving open the possibility of nevertheless finding one or more issues waived based on any continuing deficiencies.

## DISCUSSION

### I. Arguments

Krohe asks us to reverse the order, including its award of attorney fees, because neither collateral estoppel nor the statute of limitations should bar his claims. He argues that collateral estoppel should not apply because of the doctrine's exception for cases of

7.

extrinsic fraud. Krohe advances numerous arguments why his petition should be deemed timely—all of which essentially assert a later accrual date, an earlier constructive filing date, or various forms of tolling, including under Emergency rule 9.

For her part, Steinhardt argues that we may affirm on either ground relied upon by the trial court, and that we should strike Krohe's amended opening brief either in part or in whole for failing to provide coherent arguments with sufficient citations. Specifically, Steinhardt urges that the issues of fraud, delayed discovery, tolling, deprivation of constitutional rights, and "cruel and unusual punishment" have been waived for failure to support these issues with citations to the record.

We see no reference to "cruel and unusual punishment" in Krohe's opening brief; and we understand Krohe's fraud and due process arguments to be part and parcel of his challenges to the probate court's application of the statute of limitations and the collateral estoppel doctrine. Although far from perfect, Krohe's amended opening brief contains adequate citations both to the record and to precedent to allow us to consider his delayed discovery and tolling arguments. Accordingly, we do not deem any of Krohe's arguments waived for noncompliance with briefing requirements.[3]

## II.    Analysis

For the reasons explained below, we conclude that res judicata bars Krohe's claims related to Steinhardt's first and final account, which are not saved by the extrinsic fraud exception; but res judicata does not bar Krohe's claims related to Steinhardt's alleged removal of tangible personal property from the Trust, and the face of the petition does not show that Krohe's claims regarding the removal of artwork are necessarily untimely. We therefore affirm in part and reverse in part the judgment of the probate court.

---

[3]    Perhaps because of her view that these issues were waived, Steinhardt's brief provides no substantive response to Krohe's arguments for tolling, delayed discovery, or the extrinsic fraud exception.

### A. The Accounting-related Claims Are Barred as Res Judicata

In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the petition and review de novo any issues of law—such as application of the res judicata doctrine. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166; see *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.)

"The doctrine of res judicata applies in probate proceedings to bar a party from relitigating a claim that has been finally determined in a prior proceeding." (*Hudson v. Foster* (2021) 68 Cal.App.5th 640, 663 (*Hudson*), fn. omitted; see *Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 591 (*Lazzarone*).) An order settling a trustee's account, ratifying her acts, and/or allowing her resignation is an appealable probate order, which, once final, is conclusive as to all matters passed upon by the court and as to all persons with an interest in the trust property—that is, unless the order is vitiated by extrinsic fraud. (§ 1300, subds. (b), (c), (i) [designating appealable orders]; *Lazzarone*, at pp. 591–592, 595.) Any alleged misconduct apparent on the face of the account must be promptly raised, or else approval of the accounting will become res judicata. (*Lazzarone*, at pp. 590, 594–595.)

Krohe, the sole beneficiary of the Trust, certainly had an interest in the Trust property, and the October 2017 order approving Steinhardt's acts as trustee, settling her first and final account, and permitting her resignation became final long ago—with no appeal having been made. (See Cal. Rules of Court, rule 8.104(a) [time to appeal].) Accordingly, res judicata must bar Krohe's attempt to relitigate any issues "passed upon" by the court in granting Steinhardt's petition. (See *Lazzarone*, *supra*, 181 Cal.App.3d at pp. 591–592 ["An order settling a trustee's account, like an order settling the account of an executor or administrator, is conclusive as to all matters passed upon but is not binding as to those matters not passed upon."].)

In approving Steinhardt's first and final account in October 2017, the probate court necessarily passed upon the issues Krohe now seeks to raise regarding (1) the accuracy and veracity of her accountings and (2) her exercise of due care in managing Trust funds with respect to investments and expenses disclosed in the accountings. In reviewing Steinhardt's section 17200 petition, the probate court had a duty "*imposed by law* to inquire into the prudence of the trustee's administration." (*Lazzarone*, *supra*, 181 Cal.App.3d at p. 594 & fn. 10 [discussing *McLellan v. McLellan* (1941) 17 Cal.2d 552, 554; *Carr v. Bank of America etc. Assn.* (1938) 11 Cal.2d 366, 373 (*Carr*)].) This included a duty to "scrutinize" the account submitted. (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427.)

Krohe's first claim—that Steinhardt's accounting was "false" and fraudulent—was based entirely on his arithmetical comparison of the same financial summaries and itemizations provided to the court for approval. The probate court is presumed to have scrutinized this same information and therefore must have found (rightly or wrongly) that the accounts were accurate before it "settled and approved" the first and final account. (See *Carr*, *supra*, 11 Cal.2d at p. 373 ["we must presume that [the probate court] performed its duty"].) Similarly, Krohe's second claim is based on specific line items expressly disclosed in Steinhardt's accountings: (1) the decreases in value of Steinhardt's investment of Trust money in a fund called "John Hancock Funds II," and (2) the payment of attorney fees to the Dowling & Aaron law firm. "It was apparent to the probate court from the documents presented upon the [trustee]'s account and petition … that the respondent [trustee] had retained said [investment] during the administration of the [Trust] and that [it] had … depreciated in value." (*Ibid*.) It was equally apparent to the probate court that the Trust had paid for the services of attorneys. "The 'issues presented' by the petition include not only the account's arithmetical accuracy but also whether the trust has been mismanaged. [Citation.] Approval of the account thus negates a claim of mismanagement." (*Lazzarone*, *supra*, 181 Cal.App.3d at p. 593, discussing

10.

*McLellan v. McLellan*, *supra*, 17 Cal.2d at p. 554; see *Carr*, *supra*, 11 Cal.2d at p. 374 [holding that an order settling an account "conclusively negatives the charge of mismanagement, negligence or fraud on the part of the … executor"].)

Krohe fails to convince us that the extrinsic fraud exception should prevent the application of res judicata to these issues conclusively decided in adjudicating Steinhardt's petition.[4] Extrinsic fraud refers to "fraud in obtaining the order itself." (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 425.) "Extrinsic fraud occurs when ' " 'the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practi[c]ed on him by his opponent,' " ' or when 'fiduciaries have concealed information they have a duty to disclose.' " (*Id.* at p. 426, quoting *Lazzarone*, *supra*, 181 Cal.App.3d at p. 596.) Res judicata does not protect settled accounts of fiduciary administrators "who withheld information that would have enabled the beneficiaries to attack the accounts." (*Hudson*, *supra*, 68 Cal.App.5th at p. 666.)

Steinhardt did not prevent Krohe from participating in the proceedings on her 2017 petition. Krohe admits, and the record confirms, that he was served with the petition and the attached accounting and that he received notice of the October 3, 2017 hearing. Although Krohe has consistently maintained that he did not receive notice of the subsequent October 31, 2017 hearing and the record contains no direct proof that he was notified, Judge Kazanjian affirmatively found in her order signed the same day that "[n]otice of the hearing was given as required by law." And in any event, it is undisputed that in January 2018, Krohe received the notice of order regarding the October 2017 order and did nothing to attempt to set aside that order.

---

**4** Likely because Krohe did not assert any extrinsic fraud argument in his brief in opposition to Steinhardt's motion for judgment on the pleadings, the probate court did not address this exception in its res judicata analysis. However, Krohe did raise the extrinsic fraud exception in several filings surrounding Steinhardt's motion, and we exercise our discretion to briefly reject his arguments here.

The second form of extrinsic fraud also is not present because Steinhardt's accountings did not conceal or withhold any of the information Krohe is now using to belatedly attack those accounts. (See *Hudson*, *supra*, 68 Cal.App.5th at p. 666.) Indeed, Krohe relies exclusively upon information and calculations contained on the face of the accountings approved by the probate court. Accordingly, Krohe's claims based on the purportedly false accounting and alleged mismanagement of Trust funds with respect to investments and attorney fees are barred because they would require relitigation of issues conclusively decided in the October 2017 order, which Krohe could have challenged at the time.

However, we disagree with the probate court's conclusion that *all* of Krohe's claims were barred by virtue of the decision on Steinhardt's petition. Krohe's allegations that Steinhardt improperly removed from the Trust several pieces of art stand apart from the above discussed allegations pertaining to the Trust's financial accounts. The record provides no basis for concluding the probate court passed upon Steinhardt's purported secret removal of tangible personal property in the form of artwork during her administration of the Trust. (See *Lazzarone*, *supra*, 181 Cal.App.3d at pp. 591–592 [order settling a trustee's account "is conclusive as to all matters passed upon but is not binding as to those matters not passed upon"].) The first and final account approved by the probate court details all of the Trust's *financial* transactions and assets during Steinhardt's trusteeship. The only tangible personal property mentioned in the accounts are sales of a few cars. The record contains no inventory or catalog of tangible personal property belonging to the Trust, or its whereabouts, and there is no indication such an inventory was presented to the probate court. Krohe alleges and avers that he received an "inventory" of the Trust's tangible property from Steinhardt on December 28, 2017— several months after the order approving the accountings—and the inventory did not list the paintings in question. At this point, it remains unknown when, or even whether,

Steinhardt removed the subject artwork from the Trust.[5] This leaves us unable to say that the probate court necessarily approved the purported conveyance of this artwork, of which it was never informed. Although the probate court "confirmed and approved" all of Steinhardt's "acts and transactions" as trustee, that approval cannot extend to acts of which the court was not aware. Steinhardt's handling of the Trust's tangible personal property—other than the handful of car sales disclosed in the accounting—simply was not an issue before the court in the 2017 petition. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [the burden of establishing issue preclusion rests on the party asserting estoppel].) Therefore, Krohe's claims based on the removal of artwork from the Trust are not barred by the October 2017 order on Steinhardt's petition.[6] We next consider whether those claims are nonetheless time barred, as the probate court alternatively found.

### B. *The Artwork Removal Claims Are Not Necessarily Time Barred*

As with a demurrer, a motion for judgment on the pleadings may not be granted on grounds of untimeliness unless the face of the pleading shows the cause of action is "necessarily barred by a statute of limitations." (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 825 (*April Enterprises*).) The probate court erred in granting judgment on Krohe's artwork removal claims as time barred. While further proceedings

---

**5** The record also does not affirmatively indicate that the subject artwork was ever made part of the Trust res to begin with. The accounting for the Trust's opening fiscal period (in 2007, just after Marla established the Trust) lists only two non-cash assets: a car and Marla's Yorba Linda home. None of the accounts for the following fiscal periods mention the receipt of any artwork into the Trust. However, this is a merits problem, not a basis for deeming the artwork claims res judicata.

**6** Krohe's claim that Steinhardt improperly disposed of Krohe's personal music recordings and recording equipment is not a claim directed to the administration of Trust property. Krohe alleges those items belonged to him, not his mother; they were simply present at his mother's house when she passed away. Accordingly, that claim is beyond the jurisdiction of the probate court.

may or may not establish the untimeliness of these claims, the face of the petition does not show they are necessarily untimely.

<u>Applicable Statute of Limitations</u>

All agree the statute of limitations for Krohe's artwork related claims is three years.[7]  Construed as a claim for breach of fiduciary duty, for not disclosing (or actively concealing) the taking of Trust property, section 16460's three-year statute of limitations period applies.  Krohe's allegations that Steinhardt unlawfully took paintings belonging to the Trust also resemble a claim of conversion, which likewise has a three-year statute of limitations window.  (Code Civ. Proc., § 338, subd. (c)(1); see *Regent Alliance Ltd. v. Rabizadeh* (2014) 231 Cal.App.4th 1177, 1181 [conversion is " 'the wrongful exercise of dominion over the personal property of another' "].)

<u>Accrual and Tolling</u>

The general rule is that "an action accrues on the date of injury"; however, an exception known as the "discovery rule" delays the accrual date until the time the complainant becomes aware of the injury.  (*Jolly v. Eli Lilly & Co*. (1988) 44 Cal.3d 1103, 1109.)

Whether construed as a claim for conversion or for breach of trust, the discovery rule can be applied in determining the accrual date for Krohe's artwork claims.  (See *Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 917 (*Strasberg*) [statute of limitations for conversion accomplished by a fiduciary's wrongful concealment did not begin to run until the beneficiary discovered or ought to have discovered the conversion]; see also *Quick v. Pearson* (2010) 186 Cal.App.4th 371, 378 [recognizing that § 16460, subd. (a)(2) expressly refers to the discovery rule]; *April Enterprises*, *supra*,

---

[7]    Krohe briefly posits an alternative six-year statute of limitations under Code of Civil Procedure section 338, subdivision (c)(3)(A), but that provision applies only to actions for recovery of fine art brought against "a museum, gallery, auctioneer, or dealer," none of which describe Steinhardt.

14.

147 Cal.App.3d at p. 827 [deeming it well settled that the discovery rule applies to claims of breach of fiduciary duty].)

Section 16460, subdivision (a)(2) defines the rule's application for breach of trust claims where no prior written account has disclosed the claim, stating a beneficiary's claim is barred "unless a proceeding to assert the claim is commenced within three years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim." [8] This rule statement accords with the common-law construction of the rule applicable to claims of conversion where "a fiduciary has concealed the material facts giving rise to the cause of action." (*Strasberg*, *supra*, 51 Cal.App.4th at p. 916.) In that scenario, "the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion." (*Ibid.*)

Here, the probate court acknowledged the discovery rule's applicability but failed to actually apply it to Krohe's claims regarding the taking of the artwork. The court read Krohe's petition to allege that Steinhardt "wrongfully took possession of or gave away items of artwork" in the weeks and months following Marla's death in February 2009. The court then concluded, "All of that having *occurred* some eleven (11) years before Mr. Krohe's petition, those complaints are time-barred." (Italics added.) However, the petition does not state that the alleged wrongful taking occurred in 2009, and even if it did, that does not address the question of when Krohe alleges he *learned* of the taking.

According to the petition, "[a]bout 4 weeks after Marla Krohe died [] and soon after assuming office as successor trustee Zandra Steinhardt began to remove items from the Marla Krohe estate," listing a street address in Yorba Linda, California. The petition and its imbedded declaration go on to state that Krohe repeatedly requested photographs

---

[8] Krohe alleges he never received any interim accountings or inventories of the Trust's tangible personal property, and although Steinhardt denies this, in a judgment on the pleadings courts must accept the allegations as true. Therefore, the applicable subdivision of section 16460 is subdivision (a)(2).

15.

and a catalog of the artwork being removed from the home, but Steinhardt provided neither.  Krohe avers that, other than two paintings given to friends of Marla's, Steinhardt informed him on some unspecified date that "all the rest of the paintings were in [Steinhardt]'s storage at her home in Fresno."  Although he never received the requested documentation of the artwork, Krohe alleges that he only had reason to believe the paintings were gone when he received the "inventory to the assets property" on December 28, 2017, and the paintings were not on it.  In January 2018, Krohe says he learned from Fischer (the newly appointed trustee) that "there were no paintings or artwork" in the Trust storage facility.  (Capitalization omitted.)  That month, Krohe also "wrote demanding return of [the] paintings," but Steinhardt would not respond or take his calls.

Thus, we do not read the petition to allege that Steinhardt wrongfully removed the paintings from the Trust in 2009, but rather to say that is when she physically moved the paintings out of Marla's house after her passing, to place them in storage.  (The accountings reflect that Marla's Yorba Linda house was sold in 2010.)  The petition is silent as to when the wrongful taking of these paintings may have occurred.  All we are told is that, early on, Steinhardt "promised to keep the paintings for safe keeping for Krohe and it tur[ned] out when Krohe finally [received] the inventory there [were] no paintings."

Krohe directs us to *April Enterprises*, *supra*, 147 Cal.App.3d 805, a case in which judgment on the pleadings had also been granted on untimeliness grounds for a claim of breach of fiduciary duty, based on a breach occurring on a date unknown to the plaintiff.  The parties were joint venturers in the television industry, each a fiduciary of the other, and the plaintiff alleged that in 1976 it discovered certain videotapes of their television show had been erased at some unknown date, in violation of the parties' agreements.  (*Id.* at pp. 814, 827.)  The Court of Appeal observed that the plaintiff "merely pled the discovery of the erasure which constituted the alleged breach shortly before filing suit

16.

without giving [a] specific time of the breach.  Indeed since the defendants possessed exclusive knowledge as to the date of the actual erasure, [the plaintiff] was in no position to allege when that event occurred."  (*Id.* at pp. 825–826.)  The complaint was "silent as to the date of destruction," which "may not have occurred until shortly before [the plaintiff] found out about it and filed suit."  (*Id.* at p. 826.)  As a result, the court held the claim was "not necessarily time barred," judging from the face of the pleadings.  (*Ibid.*)  And it held that, if further proceedings in the case established the date of the plaintiff's injury, the discovery rule would apply—with the fact finder ultimately determining at trial the timeliness of the claims.  (*Id.* at pp. 826–828.)  In so holding, the court noted the discovery rule was "particularly appropriate when the defendant maintains custody and control of a plaintiff's property or interests."  (*Id.* at p. 827.)

As in *April Enterprises*, Krohe's petition here is silent as to the date of the alleged wrongful taking, a fact which likewise would be in Steinhardt's sole possession as the trustee, especially given that Krohe has been incarcerated this whole time.  However, more than three years elapsed between Krohe's alleged discovery that the paintings were missing in December 2017 and the filing of his petition in April 2021.  It is safe to assume that Krohe's injury occurred, if at all, before December 28, 2017, when he says he first saw the paintings were missing from the property inventory.  Thus, unlike in *April Enterprises* where the plaintiff sued "[s]hortly after [its] discovery" of the tapes' erasure (*April Enterprises*, *supra*, 147 Cal.App.3d at pp. 814–815), the face of Krohe's pleading might still show his claims are necessarily time barred.

Nevertheless, as explained next, the combination of Krohe's delayed discovery of the paintings' removal and the rule-based tolling for the COVID-19 pandemic demonstrates that Krohe's artwork claims still are not necessarily untimely.

### *Delayed Discovery*

"The question [of] when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless

the evidence can support only one reasonable conclusion." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 61.) In cases involving breach of a fiduciary relationship, "the burden typically falls on the plaintiff to 'plead facts sufficient to convince the trial judge that delayed discovery was justified. And when the case is tried on the merits the plaintiff bears the burden of proof on the discovery issue.' " (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 947, quoting *April Enterprises*, *supra*, 147 Cal.App.3d at p. 832.) To invoke the discovery rule, the complainant must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808.)

In determining when a complainant *should have* discovered their claim or injury, our Supreme Court has held that the statute of limitations begins to run "when the plaintiff suspects or should suspect that [their] injury was caused by wrongdoing." (*Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1110.) The complainant "need not be aware of the specific 'facts' necessary to establish the claim;" it is enough if the complainant has "a suspicion of wrongdoing." (*Id.* at p. 1111.) Such suspicion puts the aggrieved party on inquiry notice and requires a diligent investigation by that party to go "find the facts" to support their suspicion. (*Ibid.*) The existence of a fiduciary relationship between the parties "limits the plaintiff's duty of inquiry by eliminating the plaintiff's usual duty to conduct due diligence" (*Ferguson v. Yaspan* (2014) 233 Cal.App.4th 676, 683), but it does not permit that plaintiff to ignore facts " ' "sufficient to arouse the suspicions of a reasonable [person]," ' " if such facts come to his attention (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 177).

As to the first prong, the petition pleads with specificity the time and manner in which Krohe discovered the facts underlying his missing artwork claims. Krohe alleges he received by mail an inventory of the Trust's tangible personal property on

18.

December 28, 2017, separate from the financial accountings provided to the court,[9] and realized the paintings were not listed on it.

On the second prong, the question of when Krohe was on inquiry notice of his artwork removal claims is a question of fact because the petition's allegations do not support only one reasonable conclusion. Accepting Krohe's allegations as true, it is plausible he did not have reason to know of or suspect wrongdoing with respect to the paintings before receiving the December 2017 inventory. Steinhardt's alleged ongoing refusal to provide Krohe with a catalog or inventory of the paintings despite his requests in the months after his mother's passing might give rise to a suspicion of wrongdoing were it not for Krohe's further allegations that Steinhardt nonetheless "promised to keep the paintings for safe keeping for [him]" and "informed [him] all the rest of the paintings were in [Steinhardt]'s storage at her home in Fresno."

Krohe further alleges that the only inventory he received of the tangible personal property in the Trust was the one he received in December 2017. Further proceedings may refute that claim; however, accepting it at this stage, we do not view the alleged lack of earlier inventories as sufficient to raise a suspicion that Steinhardt, the fiduciary trustee, was removing tangible property from the Trust. "[I]n fiduciary relationships, a plaintiff is often unable to observe or understand a breach of fiduciary duty because the fiduciary is 'in full control of [the plaintiff's] affairs and of the [disposition of its assets].' " (*NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1233, fn. 5 [middle bracket in original].) The petition does not plead facts demonstrating that Krohe believed he was entitled to periodic inventories of the Trust's tangible property; nor does it plead any other basis for Krohe to suspect—before December

---

**9** As discussed in the previous section regarding res judicata, the first and final account did not "adequately disclose[]" the existence of a claim against Steinhardt for mishandling the paintings. (§ 16460, subd. (a)(1).) Therefore, Krohe's receipt of the first and final account in September 2017 does not start the statute of limitations period, as it would if we were applying section 16460, subdivision (a)(1).

2017—that the Trust's tangible property was not where Steinhardt had told him it was. (See *id.* at p. 1232 [a plaintiff's inability to discover a cause of action may occur when it is particularly difficult for the plaintiff to observe the breach of duty, or when the injury itself is hidden].)  Krohe's incarceration throughout Steinhardt's trusteeship reinforces our conclusion that the petition does not reveal a lack of reasonable diligence in investigating his claims.  He could not, for instance, go personally investigate the contents of the Trust storage facility; and Steinhardt would have been under no obligation to permit an agent of Krohe's to access the storage facility to investigate on his behalf.  Krohe sufficiently alleges that he reasonably relied on Steinhardt's word, and there was nothing more he should have done to discover the missing paintings sooner than December 2017.

We do not here decide as a matter of law that Krohe's artwork removal claims accrued on December 28, 2017.  Further proceedings and evidence may reveal grounds to support these claims' accrual long before.  We simply conclude that, on the face of the petition, it is plausible Krohe did not have reason to suspect the paintings were missing before December 28, 2017.  Momentarily assuming that was the accrual date of Krohe's artwork removal claims, this date still does not fall within three years of the filing of Krohe's petition.  Accordingly, we turn to Krohe's arguments for tolling—that is, extending—the three-year statute of limitations period.

### *Tolling Under Emergency rule 9*

Krohe asserts various grounds for tolling, both equitable and statutory.  Because we agree with Krohe that Emergency rule 9, one of the Judicial Council's responses to the COVID-19 pandemic, sufficiently tolled the statute of limitations period, we do not address the other tolling arguments.[10]

---

**10**    However, in case it should arise again later in this litigation, we note that we currently see no reason the prisoner claims tolling statute should not apply to further extend the statute of limitations by up to an additional two years, if necessary.  (See Code Civ. Proc., § 352.1 [authorizing up to two years of tolling if, "at the time the cause of

Approximately three years four months (1,203 days) elapsed between Krohe's alleged discovery of his artwork removal claims on December 28, 2017, and the filing of his petition on April 14, 2021. Absent tolling, therefore, these claims would be barred by the three-year statute of limitations even giving Krohe the benefit of the discovery rule.

Emergency rule 9, subdivision (a) provides: "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." According to the Advisory Committee Comment, the "rule also applies to statutes of limitations … found in codes other than the Code of Civil Procedure, including …, for example, the Family Code and Probate Code." (Advisory Com. Cmt., Cal. Rules of Court, Appendix I: Emergency Rules Related to COVID-19, rule 9.) Thus, Emergency rule 9 tolled lengthier statutes of limitations—like those in section 16460 and Code of Civil Procedure section 338, subdivision (c)(1)—for almost six months (178 days, to be precise). This is enough to make Krohe's claims timely if one counts from December 28, 2017. Three years (1,095 days) plus 178 days equals 1,273 days; meaning, Krohe's April 14, 2021 petition was filed 70 days before the tolled statute of limitations period expired (again, assuming a December 28, 2017, accrual date).[11]

_____

action accrued," the person was "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life"].) The record amply establishes that Krohe was in prison on December 28, 2017, when he says he discovered the missing paintings, and it appears from the allegations in Steinhardt's 2017 petition that Krohe was convicted before his mother died and received a "lengthy sentence," which he is still serving.

[11] As previously mentioned, Steinhardt offers no arguments on the subject of Emergency rule 9 tolling in this court. Her one-line argument to the probate court was that Emergency rule 9 should not extend the statute of limitations because "the cause of action arose when the hearing was held in 2017, almost three years prior to the COVID-19 pandemic." However, the artwork removal claims do not arise from the October 2017 hearing, and even assuming they did the three-year statute of limitations period would extend from October 2017 through October 2020, overlapping with Emergency rule 9's extension window. (See *Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 403 [holding that Emergency

## C. *Further Proceedings*

Having determined that Krohe's claims regarding Steinhardt's disposition of the paintings are not necessarily time barred based on the allegations in the petition, we reverse the order granting judgment on the pleadings solely with respect to the claims related to those paintings. We affirm the judgment in favor of Steinhardt on all other claims in the petition, which are barred by res judicata as discussed, *ante*.

We close by noting that this partial reversal should not be taken as expressing any views on the merits of Krohe's claims regarding the paintings. Steinhardt did not seek judgment on the pleadings based on failure to state a claim, so we do not decide whether the petition sufficiently states a cause of action for conversion or breach of fiduciary duty. (Cf. *Regent Alliance Ltd. v. Rabizadeh*, *supra*, 231 Cal.App.4th at p. 1181 [elements of conversion are " '(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages' "]; *LaMonte v. Sanwa Bank California* (1996) 45 Cal.App.4th 509, 517 ["In order to plead a cause of action for breach of fiduciary duty against a trustee, the plaintiff must show the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach …."].)

We reverse Steinhardt's award of attorney fees for bringing the motion for judgment on the pleadings only because we are reversing in part the order granting that motion. (See *Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 263.) We express no views on the frivolous or nonfrivolous nature of Krohe's claims regarding the alleged taking of the paintings. Should further proceedings ultimately result in a judgment against Krohe on those claims, the probate court may reassess the propriety of

---

rule 9 temporarily tolls statutes of limitations, and noting " 'the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred.' "].)

awarding attorney fees to Steinhardt if it still deems Krohe's claims to be frivolous or brought in bad faith. Krohe is thus cautioned that pursuit of frivolous claims may well result in an even larger amount of attorney fees being awarded out of the Trust's funds in the end. That said, the artwork removal issue was not previously adjudicated, and the face of the petition does not show the artwork removal claims were necessarily untimely; we therefore remand the case for further proceedings as to those claims and those claims only.

## DISPOSITION

The order granting judgment on the pleadings on the petition for breach of fiduciary duty is affirmed as to all claims except those involving the removal of certain paintings from the Trust and reversed only as to the claims specifically related to those paintings. The order is also reversed as to the award of attorney fees. The case is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(5).)

DE SANTOS, J.

WE CONCUR:

PEÑA, Acting P. J.

SMITH, J.

23.